STATE ex rel. JOSEPH H. BEEK v. JOHN WAGENER.[1]

October 26, 1899.

Nos. 11,734—(14).

77  483
77  491

## Laws 1899, c. 225, Constitutional.

Laws 1899, c. 225, "An act to license and regulate and define business of commission merchants or persons selling agricultural products and farm produce on commission," etc., *held* constitutional. It is not in conflict with the provisions of the fourteenth amendment to the federal constitution. Nor does it conflict with any of the provisions of section 8 of article 1 of said constitution. Nor are any of its provisions in conflict with sections 2 or 7 of article 1 of the state constitution. Nor is it unconstitutional on the ground that legislative powers have therein been delegated to the railroad and warehouse commission of this state.

## Same—Sale of Farm Products on Commission.

The peculiar characteristics of agricultural products and farm produce, and the liability to peculiar abuses resulting from a sale thereof on com-

[1] STATE ex rel. WILLIAM B. MOHLER v. PHIL T. MEGAARDEN.

October 26, 1899.

Nos. 11,739—(28).

Writ of habeas corpus issued by the district court for Hennepin county to respondent sheriff of said county commanding him to have the body of relator before said court, together with the cause of his detention. Respondent justified under a warrant of arrest issued by the municipal court of Minneapolis, on complaint that relator had violated the provisions of Laws 1899, c. 225, by selling grain on commission and carrying on the business of a commission merchant without having obtained a license or given a bond. From an order, Elliott, J., discharging the writ and remanding relator to the custody of respondent, relator appealed. Affirmed.

*Wilson & Van Derlip*, for appellant.

*W. B. Douglas*, Attorney General, and *Childs, Edgerton & Wickwire*, for respondent.

## PER CURIAM.

The questions in this case are disposed of in State v. Wagener. It is therefore ordered that final judgment be entered in this court discharging the writ of habeas corpus and remanding the relator to the custody of the sheriff of Hennepin county for further proceedings.

mission, are such as to suggest the practical necessity for distinctive legislation on the subject, different from what would be expedient or necessary in the case of other property sold on commission, and to justify the legislature, in its discretion, in putting those who sell them on commission in a class by themselves.

### Same—Section 3 of Act.

Whether section 3 of said chapter is in conflict with certain provisions of the fourth or the fifth amendments to the federal constitution, or in conflict with provisions found in sections 7 and 10 of article 1 of the state constitution, is not decided, because the questions are not involved herein.

Writ of habeas corpus issued by the supreme court to respondent sheriff of Ramsey county commanding him to have the body of James B. Redpath before said court, together with the cause of his imprisonment or detention. Respondent justified under a warrant of arrest issued by the municipal court of St. Paul, on complaint of W. B. Douglas, charging said Redpath with having on June 17, 1899, at St. Paul, wrongfully and unlawfully engaged as a commission merchant in the business of receiving consignments of agricultural products, farm produce and fruits, to be sold by him on commission and for account of the consignors, and charging the receipt and sale of certain fruit by said Redpath, as such commission merchant. Writ discharged.

*Palmer & Beek*, for relator Beek.

Laws 1899, c. 225, conflicts with Const. (U. S.) amend. 14, § 1, and with Const. (Minn.) art. 1, § 2, in that it abridges the privileges and immunities of citizens of the United States. It conflicts with said fourteenth amendment and with Const. (Minn.) art. 1, § 7, in that it deprives certain persons of liberty and property without due process of law. It conflicts with said fourteenth amendment and with Const. (Minn.) art. 1, § 2, in that it denies to certain persons within the jurisdiction of the state the equal protection of the laws.

The act conflicts with Const. (U. S.) amend. 4, and Const. (Minn.) art. 1, § 10, in that it deprives certain persons of their right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures; and with Const. (U. S.) amend. 5, and with Const. (Minn.) art. 1, § 7, in that it compels certain persons in

criminal cases to be witnesses against themselves. Boyd v. U. S., 116 U. S. 616; Entick v. Carrington, 19 How. St. Tr. 1029; Counselman v. Hitchcock, 142 U. S. 547; Bram v. U. S., 168 U. S. 532.

The act conflicts with Const. (U. S.) art. 1, § 8, in that it interferes with and attempts to regulate commerce between the state of Minnesota and other states. State v. Donaldson, 41 Minn. 74; Henderson v. Mayor of the City of New York, 92 U. S. 259; Soon Hing v. Crowley, 113 U. S. 703; Mugler v. Kansas, 123 U. S. 623; Minnesota v. Barber, 136 U. S. 313; Leisy v. Hardin, 135 U. S. 100; In re Minor, 69 Fed. 233.

The act exceeds the power conferred by the state constitution, in that it attempts to delegate powers vested solely and exclusively in the legislative body. In re Wilson, 32 Minn. 145, 146; State v. Mayor of the City of St. Paul, 34 Minn. 250; Minneapolis Gas L. Co. v. City of Minneapolis, 36 Minn. 159; County Commrs. of Hennepin Co. v. Robinson, 16 Minn. 340 (381); Darling v. City of St. Paul, 19 Minn. 336 (389); State v. Young, 29 Minn. 474; State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281; Anderson v. Manchester F. Assur. Co., 59 Minn. 182; O'Neil v. American, 166 Pa. St. 72; Owensboro v. Todd, 91 Ky. 175; Ex parte Cox, 63 Cal. 21; Maxwell v. State, 40 Md. 273, 274; Yick Wo v. Hopkins, 118 U. S. 356. See also 1 Kent, Com. 446; Rice v. Foster, 4 Harrington (Del.) 479; Parker v. Com., 6 Pa. St. 507, 511.

*Wilson & Van Derlip,* for relator Mohler.

The act is not a tax law. State v. Conlon, 65 Conn. 478. If it were, it would conflict with Const. art. 9, § 1. Kansas v. Grush, 151 Mo. 128. It was intended to be a regulation of business in the exercise of the police power. The police power of the state has the right to protect the general welfare by subordinating to it the rights of the individual in respect to person and property. 2 Kent, Com. 340; New Orleans Water-Works Co. v. St. Tammany Water-Works Co., 4 Woods, 134; Stockton Laundry Case, 26 Fed. 611; New Orleans v. Hart, 40 La. An. 474; State v. Noyes, 47 Me. 189, 211; Com. v. Alger, 7 Cush. 53; People v. Jackson, 9 Mich. 284; Thorpe v. Rutland, 27 Vt. 140; Marmet v. State, 45 Oh. St. 63; State v. Gardner, 58 Oh. St. 599; State v. Searcy, 20 Mo. 489; Town v. Rose Hill,

70 Ill. 191; Board v. Willamette, 6 Or. 219; Van Hook v. City, 70 Ala. 361; Justice v. Com., 81 Va. 209; In re Ah Fong, 3 Sawy. 144; Philadelphia v. Bowers, 4 Houst. (Del.) 506; Munn v. Illinois, 94 U. S. 113; Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U. S. 557; Beer Co. v. Massachusetts, 97 U. S. 25; Mugler v. Kansas, 123 U. S. 623; Budd v. New York, 143 U. S. 517; New York & N. E. R. Co. v. Bristol, 151 U. S. 556; Holden v. Hardy, 169 U. S. 366; People v. Budd, 117 N. Y. 1; Chicago v. City, 97 Wis. 418; State v. Goodwill, 33 W. Va. 179; Rippe v. Becker, 56 Minn. 100, 112; State v. Chicago, M. & St. P. Ry. Co., 68 Minn. 381; State v. Wagener, 69 Minn. 206.

No law falls properly within the police power which does not have for its object the advancement of the public interest, the protection of a common public right, or does not operate on some public function or on property invested with a public interest. New Orleans Water-Works Co. v. St. Tammany Water-Works Co., supra; People v. Warden, 157 N. Y. 116; State v. Goodwill, supra; State v. Scougal, 3 S. D. 55; Wilkinson v. Leland, 2 Pet. 627; New Orleans G. L. Co. v. Louisiana L. Co., 115 U. S. 650; Ex parte Whitwell, 98 Cal. 73; Smiley v. MacDonald, 42 Neb. 5; Lawton v. Steele, 119 N. Y. 226; Allgeyer v. Louisiana, 165 U. S. 578; Cooley, Const. Lim. 710; State v. Donaldson, 41 Minn. 74; Potter's Dwarris, St. 458; San Antonio v. Wilson (Tex. App.) 19 S. W. 912; People v. Budd, supra; Frorer v. People, 141 Ill. 171, note, 142 Ill. 387. As to what constitutes a public interest, see Cooley, Const. Lim. 736; Zanesville v. Gas-Light, 47 Oh. St. 1; State v. Scougal, supra; Millett v. People, 117 Ill. 294; State v. Goodwill, supra; People v. Budd, supra; Munn v. Illinois, supra; State v. Loomis, 115 Mo. 307; San Antonio v. Wilson, supra. It is the duty of the courts to declare any statute invalid which attempts to go farther than to legislate for the welfare of the public. State v. Donaldson, supra; People v. Warden, supra; Ex parte Whitwell, supra; Mugler v. Kansas, supra; Hennington v. Georgia, 163 U. S. 299.

The act contains no element of a public character, but is exclusively a private act for the benefit of consignors who entrust agricultural products or farm produce on commission for sale. It is the duty of the courts to go beneath the surface, and to get

at the real purpose of an act, in order to pass on its validity. Morgan's Steamship Co. v. Louisiana Board of Health, 118 U. S. 455; People v. Warden, supra; Nichols, v. Walter, 37 Minn. 264. The dictum of the legislature cannot invest a business with a public interest. Yates v. Milwaukee, 10 Wall. 496, 505; Coe v. Schultz, 47 Barb. 64; Lawton v. Steele, supra. The right to require a license exists only to promote the welfare of the community. Tiedeman, Lim. 301; State v. Conlon, supra; Cooley, Torts (2d Ed.) 328. Statutes which have attempted to regulate payment of wages have almost uniformly been held void, in that they trench on the right of individuals to contract. Frorer v. People, supra; Braceville v. People, 147 Ill. 66; Ex parte Kuback, 85 Cal. 274; State v. Goodwill, supra. The state may not under pretense of a police regulation impose a trammel on constitutional rights. State v. Julow, 129 Mo. 163; Stockton Laundry Case, 26 Fed. 611. It is not enough to warrant legislative interference that employers in a particular business oppress their employees. State v. Loomis, supra.

The act is in violation of the state and federal constitutions. If the act interferes with the natural and inalienable rights of citizens as guarantied by the general purpose and spirit of the constitution, it is void. Com. v. Perry, 155 Mass. 177; Dabbs v. State, 39 Ark. 353; Low v. Rees, 41 Neb. 127; Gulf, C. & St. F. Ry. Co. v. Ellis, 165 U. S. 150, 159. The rights to labor, to contract, and to engage in lawful business, when not harmful to the community, are essential attributes of free citizenship under the state and federal constitutions; and the legislature may not abridge or deny the exercise of these rights, save for the protection of the public from the infliction of common injury; and none of these rights may be invaded save by due process of law. Yick Wo v. Hopkins, 118 U. S. 356; Livestock Assn. v. Crescent Co., Fed Cas. No. 8,408; Barbier v. Connolly, 113 U. S. 27; Civil Rights Cases, 109 U. S. 3, 24; Butchers' Union S. H. & L. S. L. Co. v. Crescent City L. S. L. & S. H. Co., 111 U. S. 746; Ward v. Maryland, 12 Wall. 418, 430; Slaughter House Cases, 16 Wall. 36, 97; Bertholf v. O'Reilly, 74 N. Y. 509; In re Jacobs, 98 N. Y. 98; State v. Julow, supra; State v. Scougal, supra; People v. Gillson, 109 N. Y. 389; People v. Otis, 90 N. Y. 48; In re Parrott, 6 Sawy. 349; State v. Goodwill, supra; Godcharles v. Wigeman, 113

Pa. St. 431; Allgeyer v. Louisiana, supra; Holden v. Hardy, 169 U. S. 366; Cooley, Torts (2d Ed.) 327; Cooley, Const. Lim. (6th Ed.) 744, 745. As to what is due process of law, see Cooley, Const. Lim. (6th Ed.) 431, 432; Wynehamer v. People, 13 N. Y. 378; Missouri P. Ry. Co. v. Humes, 115 U. S. 512. In all cases of legislation within the police power, the act must be based on some justifying condition then existing. Leep v. Railway, 58 Ark. 407. See State v. Julow, supra; Yates v. Milwaukee, supra; Coe v. Schultz, supra; Lawton v. Steele, supra.

The act is void as class legislation. State v. Cooley, 56 Minn. 540, 550; Deppe v. Chicago, 36 Iowa, 52; Gulf, C. & St. F. Ry. Co. v. Ellis, supra; State v. Spaude, 37 Minn. 322, 324; Cameron v. Chicago, M. & St. P. Ry. Co., 63 Minn. 384; State v. Ritt, 76 Minn. 531; Wally v. Kennedy, 2 Yerg. 554, 10 Tenn. 554; State v. Goodwill, supra; Utsey v. Hiott, 30 So. C. 360; Sanborn v. Commissioners of Rice Co., 9 Minn. 258 (273); State v. Conlon, supra; Johnson v. St. Paul & D. R. Co., 43 Minn. 222; State v. Sheriff of Ramsey Co., 48 Minn. 236; Shaver v. Pennsylvania Co., 71 Fed. 931; Frorer v. People, 141 Ill. 171; Low v. Rees, supra; State v. Wagener, supra; State v. Gardner, supra; San Antonio v. Wilson (Tex. App.) 19 S. W. 910; Atchison, T. & S. F. R. Co. v. Matthews, 174 U. S. 96. Equal protection of the laws insures equality of accessibility to the courts. Minneapolis & St. L. Ry. Co. v. Beckwith, 129 U. S. 26; Cooley, Const. Lim. 483.

The act conflicts with Const. (Minn.) art. 1, §§ 2 and 8. It conflicts with Const. (Minn.) art. 1, § 10. Boyd v. U. S., 116 U. S. 616. The act must be condemned because it requires commission merchants to extend special advantages to a small class of the community. Lake Shore & M. S. Ry. Co. v. Smith, 173 U. S. 684. It robs consignors, as well as commission merchants, of a vested right,— the power to contract. Shaver v. Pennsylvania, supra; Frorer v. People, supra. But however flagrant the invasion of individual rights, the greatest danger lies in the harvest that must inevitably follow from the sowing of such seed. See In re Jacobs, supra; People v. Marx, 99 N. Y. 377; State v. Goodwill, supra.

*W. B. Douglas*, Attorney General, and *Childs, Edgerton & Wickwire*, for respondents Wagener and Megaarden.

The judiciary has no authority to overthrow a statute because it may be deemed unwise, inexpedient or unjust. Butler v. Chambers, 36 Minn. 69, 73; State v. Aslesen, 50 Minn. 5; State v. Corbett, 57 Minn. 345; Rippe v. Becker, 56 Minn. 100, 108; Cooley, Const. Lim. (6th Ed.) 197; State v. Chicago, M. & St. P. Ry. Co., 68 Minn. 381; State v. Peel, 36 W. Va. 802, 810; Powell v. Pennsylvania, 127 U. S. 678, 687; Missouri P. Ry. Co. v. Humes, 115 U. S. 512, 519; State v. Chapel, 64 Minn. 130.

The act is a legitimate exercise of the police power. The police power is not restricted to questions of public health, morals and peace. It extends to all other subjects in the use, control or destruction of which the general welfare is involved. Lawton v. Steele, 152 U. S. 133; Thorpe v. Rutland, 27 Vt. 140, 149; Pacific Ex. Co. v. Seibert, 142 U. S. 339; Slaughter House Cases, 16 Wall. 36; Beer Co. v. Massachusetts, 97 U. S. 25; Boyd v. Alabama, 94 U. S. 645; Munn v. Illinois, 94 U. S. 113; Missouri P. Ry. Co. v. Mackey, 127 U. S. 205; Budd v. New York, 143 U. S. 517; Brass v. North Dakota, 153 U. S. 391; Cooley, Const. Lim. (6th Ed.) 706; Minneapolis & St. L. Ry. Co. v. Herrick, 127 U. S. 210; State v. Corbett, supra; State v. Chapel, supra; Hawthorn v. People, 109 Ill. 302; Duncan v. Missouri, 152 U. S. 377; State v. W. W. Cargill Co., supra, page 223; Marmet v. State, 45 Oh. St. 63; State v. Chicago, M. & St. P. Ry. Co., supra; Railroad Co. v. Husen, 95 U. S. 465. When the subject is within the police power, the extent to which it shall be exercised and the regulations to effect the desired end are generally wholly within the discretion of the legislature. State v. Smith, 58 Minn. 35. See also State v. Edwards, 86 Me. 102; Baker v. State, 54 Wis. 368; Nash v. Page, 80 Ky. 539, 550; Brechbill v. Randall, 102 Ind. 528; Mangan v. State, 76 Ala. 60; State v. Harrington, 68 Vt. 622.

The act is not void because discriminating or class legislation. Where a law operates alike on all persons under like circumstances, there is no discrimination. Missouri P. Ry. Co. v. Mackey, supra; Powell v. Pennsylvania, supra; Barbier v. Connolly, 113 U. S. 27; Soon Hing v. Crowley, 113 U. S. 703; Missouri P. Ry. Co. v. Humes, supra; New York, N. H. & H. R. Co. v. New York, 165 U. S. 628; State v. Smith, supra; Marmet v. State, supra; Cleveland v. Backus, 133 Ind. 513. The legislature may require a license in any business.

Bullitt v. City (Ky.) 3 S. W. 802; Ex parte Mirande, 73 Cal. 365; City v. Barton, 33 Ark. 436; Hinckley v. City, 43 Ill. 183. See Union v. De Busk, 12 Colo. 294.

The requirement of a bond is no objection to the validity of the act. Brass v. North Dakota, supra; Hawthorn v. People, supra. Clothing the commission with powers of investigation is no objection. The act contemplates a hearing. Endlich, Interp. St. § 428. See State v. Peterson, 50 Minn. 239. The legislature could make the report of the commissioners prima facie evidence. Cooley, Const. Lim. (6th Ed.) 452; 11 Am. & Eng. Enc. (2d Ed.) 551; Steenerson v. Great Northern Ry. Co., 69 Minn. 353, 376; Missouri v. Merrill, 40 Kan. 404; Augusta v. Randall, 79 Ga. 304.

The act does not conflict with Const. (Minn.) art. 1, § 10. Weimer v. Bunbury, 30 Mich. 201. The law does not authorize the commission to compel commission merchants to produce evidence of an incriminating character. The court will not import into the act any such meaning. Endlich, Interp. St. §§ 264, 523; Cooley, Const. Lim. (6th Ed.) 218. The act does not deprive the merchant of his property without due process of law. The fourteenth amendment does not impose restraints on exercise of the police power. Barbier v. Connolly, supra; Mugler v. Kansas, 123 U. S. 623; Kidd v. Pearson, 128 U. S. 1; Giozza v. Tiernan, 148 U. S. 657; People v. King, 110 N. Y. 418; Newark v. Hunt, 50 N. J. L. 308; State v. Corbett, supra; Burdick v. People, 149 Ill. 600; Butler v. Chambers, 36 Minn. 69. It must be presumed that the legislature determined on full investigation and reasonable grounds that the act was a necessary regulation and a preventive of fraud. Stolz v. Thompson, 44 Minn. 271, 274.

There is no delegation of legislative authority to the commission. City v. Leebrick, 43 Iowa, 252; City v. Dickinson, 23 Neb. 426; State v. New Haven, 43 Conn. 351; People v. Dunn, 80 Cal. 211; Territory v. Scott, 3 Dak. 357; Home v. Swigert, 104 Ill. 653; Phoenix v. Welch, 29 Kan. 672; Martin v. Witherspoon, 135 Mass. 175; 6 Am. & Eng. Enc. (2d Ed.) 1022; Ryan v. Outagamie, 80 Wis. 336; Rockwell v. County of Fillmore, 47 Minn. 219. Legislative functions which are merely administrative or executive may be delegated to other departments or bodies. Moers v. City, 21 Pa. St. 188, 202;

Dowling v. Lancashire, 92 Wis. 63, 68; Georgia v. Smith, 70 Ga. 694; People v. Brooks, 101 Mich. 98; State v. Stewart, 74 Wis. 620; People v. Long Island, 134 N. Y. 506; Ex parte Bassitt, 90 Va. 679; Locke's Appeal, 72 Pa. St. 491, 498.

The act is not a regulation of commerce. Hinson v. Lott, 8 Wall. 148; Mayor v. Miln, 11 Pet. 102; Machine Co. v. Gage, 100 U. S. 676; Webber v. Virginia, 103 U. S. 344; Cleveland v. Backus, supra; Ficklen v. Shelby Co. Taxing District, 145 U. S. 1. A statute is not to be deemed a regulation of commerce merely because it indirectly affects it. Missouri, K. & T. Ry. Co. v. Haber, 169 U. S. 613. The police power was not surrendered to congress; and until congress acts, the state is at liberty to act, save as restrained by some provision of the federal constitution other than the commerce clause. License Cases, 5 How. 504; Wilson v. Black Bird, 2 Pet. 245. Even where congress has acted, a statute enacted in execution of a reserved power of the state is not to be regarded as inconsistent with an act of congress, unless the repugnance is so direct that the two acts cannot be reconciled. Sinnot v. Davenport, 22 How, 227. See also Hennington v. Georgia, 163 U. S. 299; Louisville & N. R. Co. v. Kentucky, 161 U. S. 677; Gladson v. Minnesota, 166 U. S. 427; Plumley v. Massachusetts, 155 U. S. 461; Osborne v. Florida, 164 U. S. 650.

COLLINS, J.[2]

Habeas corpus proceedings originally instituted in Ramsey county, and coming here on appeal; the purpose being to test the constitutionality of Laws 1899, c. 225. The court below sustained the act, and remanded the prisoner, Redpath. The same questions were raised in another proceeding (State v. Megaarden), and the cases have been argued as one by eminent counsel, who have ably and exhaustively presented their views,—orally as well as upon briefs.

The title of the act assailed as unconstitutional for a number of reasons is as follows:

"An act to license and regulate and define business of commission

[2] BUCK, J., absent, took no part.

merchants or persons selling agricultural products and farm produce on commission, and to require them to give a bond to the state of Minnesota for the benefit of their consignors, and prescribing a penalty for the violation of any of the provisions of this act."

It consists of eight sections, the first declaring it shall be unlawful from and after June 1, 1899, for any person, firm, or corporation to engage in the business of selling agricultural products and farm produce on commission in this state without first obtaining a license from the state railroad and warehouse commission. A bond with sufficient surety is required for the benefit of consignors, the amount of the penalty to be fixed by the commission; and, if the principal therein is to receive grain for sale, the condition of this bond is that he will faithfully account and report to all persons intrusting him with grain, and will pay over to them all proper proceeds. If grain is not received for sale on commission, the bond is to be conditioned for the faithful performance of the commission merchant's duty. By the second section the merchant who sells grain is required to render a certain statement to his consignor within 24 hours after a sale of all or a portion of such grain. The third section relates to products and produce other than grain. If a consignor shall not receive report of a sale or a remittance therefor after demand, or if, after a report is made, he is dissatisfied with it or the sale, he may complain to the railroad and warehouse commission, whose duty it is to investigate the case, and after such investigation to make a written report to the complainant; and this report is made prima facie evidence of the matters therein contained. In making this investigation power is conferred upon the commission, in express terms, to compel the merchant "to produce his record or memoranda of such sale, and give them all information in his possession regarding the report and sale so complained of."

Section 4 provides for the machinery of the act. A commission merchant desiring to procure a license must make application in writing to the railroad and warehouse commission, the application to contain certain information in respect to the nature of the business to be done by the applicant, his proposed place of busi-

ness, and the probable amount of business to be done each month. It is then incumbent on the commission to fix the amount of the bond required, and upon the execution of such a bond with sufficient security, and the payment of a fee of one dollar, to issue a license for one year. An additional bond may be required whenever it shall be deemed necessary by the commission, the amount thereof to be determined by that body. And herein the railroad and warehouse commission is given authority to revoke licenses under certain conditions. Section 5 provides for an action upon the bond by the consignor in case a consignee fails or neglects to account and report a sale, or neglects to pay over the moneys due on account of a sale, recovery to be had against the principal and sureties of the bond, with a proviso as to a distribution of the amount received in case default has been made as to two or more consignors, and such amount is insufficient to discharge the entire liability. Section 6 defines a commission merchant within the meaning of the act, while section 7 declares that any person, persons, or corporation engaged in selling any of the property for which a license is required, who fails or neglects to comply with any of the provisions of the act, shall be guilty of a misdemeanor, and on conviction shall be punished by a fine. Section 8 merely provides when the act shall take effect.

It is urged by counsel for the relator that this act is unconstitutional on several grounds. It is argued that under its provisions the privileges and immunities of citizens of the United States are abridged; that persons may be deprived of their liberty and property without due process of law; that it denies to certain persons within its jurisdiction the equal protection of the law; that it deprives certain people of the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures; that it compels certain persons in criminal cases to be witnesses against themselves; that it interferes with and attempts to regulate commerce between the state of Minnesota and other states; and, further, that it exceeds the power conferred by the state constitution, in that it attempts to delegate legislative powers, vested solely and exclusively in the legislative body.

1. In the course of the argument, relator's counsel have attacked the wisdom of this legislation, and have attempted to point out wherein the law has imposed onerous duties and obligations upon those who come within its terms. But, if this law is open to these criticisms, the remedy is with the people. The expediency of this enactment, and the propriety or wisdom of some of its sections, in which details are prescribed, are matters strictly within the legislative powers. If the act is inexpedient and unwise, or if some of its requirements are too exacting, the appeal should be to the representatives of the people, not to the courts.

2. Obviously, the act was not intended as a measure for the accumulation of a public revenue, and, if sustained at all, it must be upon the ground that it is a lawful regulation for the public good, —a legitimate exercise of the police power of the state.

The design seems to have been to protect a large class of people, engaged in agricultural pursuits, and more or less remote from market, from imposition and actual fraud when intrusting their products and produce into the hands of commission men for sale. And it is no argument against the statute to say that commission men are engaged in a legitimate business, and for that reason are not subject to police regulation, if the public good demands it. The operation of railways, the conducting of banks, the loaning of money at interest, the insurance business, the operation of custom gristmills, or grain elevators and warehouses, peddling from house to house, and the keeping of bakeries, butcher shops, hotels, restaurants, and saloons, are each legitimate and lawful occupations in this jurisdiction; but all may be subject to police regulation, and most of them are. But, of course, the right of the state to exercise police power over its citizens and their occupations is not unlimited.

The term "police power," as understood in American constitutional law, means simply the power to impose such restrictions upon private rights as are practically necessary for the general welfare of all. Rippe v. Becker, 56 Minn. 100, 57 N. W. 331. And it must be confined to such restrictions and burdens as are thus necessary to promote the public welfare, or, in other words, to prevent the infliction of public injury. State v. Chicago, M. & St.

P. Ry. Co., 68 Minn. 381, 71 N. W. 400. And in the exercise of its police powers a state is not confined to matters relating strictly to the public health, morals, and peace, but, as has been said, there may be interference whenever the public interests demand it; and in this particular a large discretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499. If, then, any business becomes of such a character as to be sufficiently affected with public interest, there may be a legislative interference and regulation of it in order to secure the general comfort, health, and prosperity of the state, provided the measures adopted do not conflict with constitutional provisions, and have some relation to, and some tendency to accomplish, the desired end. The subjects which may be legislated upon are, of necessity, continually arising as business increases, and new phases, conditions, and methods appear. The development of the law relating to the proper exercise of the police power of the state clearly demonstrates that it is very broad and comprehensive, and is exercised to promote the general welfare of the state, as well as its health and comfort. And the limit of this power cannot and never will be accurately defined, and the courts have never been willing, if able, to circumscribe it with any definiteness.

The inquiry, then, is as to how and to what extent the business in question had become affected with public interests. What evils or supposed evils did the members of the legislature have in mind, and were attempting to remedy, when enacting this law?

The fact is that the public generally looked with distrust upon the methods of merchants engaged in selling agricultural products and farm produce upon commission, perhaps without good reason. It had become a matter of common talk among the people that those who handled wheat imposed upon their consignors by reporting sales and accounting for the proceeds at the lowest prices at which that article had been sold within the period of time during which the sale could have been made, and without regard to the prices actually obtained. With prices fluctuating at all times, as is the fact in the wheat market, and rarely remaining station-

ary for more than a few minutes at a time, the opportunity for fraud seems to be without limit when selling this commodity on commission. In addition to this is the fact that the consignor usually resides at a considerable distance from the commission merchant, and is practically unable to discover whether he has been cheated or not. And, with respect to other agricultural products and farm produce, it is to be observed that they are largely of a perishable nature, and subject to rapid deterioration in transit, or after reaching the consignee. This fact gives to the latter an opportunity to falsify his report of a sale to the distant consignor, and to insist that the article consigned had become more or less unmarketable before sale could be made; and here, as in the case of grain, the latter has little or no opportunity to ascertain the truth.

Without wishing to intimate that fraud of this nature had actually become so prevalent as to justify the accusation made, we do say that a majority of the people in this state had become convinced of the truth of these charges, and in great numbers besieged the legislature in behalf of the suppression of the alleged evil practices. This was a matter of common knowledge. It was publicly believed that the business of selling agricultural products and farm produce on commission had become saturated with false and fraudulent methods, to the great injury of a large class of our citizens, who were compelled to deal with commission men, and who were powerless to detect or prevent the wrong, and that the business had thus become sufficiently affected with public interests to be the proper subject of police regulation. We are of opinion that the legislature did not exceed its powers when, under the circumstances, it enacted a measure having relation to, and a tendency to accomplish, the desired end, such as is the law now before us.

This enactment was designed to prevent false and fraudulent practices of the character complained of, to correct the evils generally believed to prevail, and to compel the merchant to whom property was consigned for sale on commission to deal honestly and to be faithful to his trust. Such a law is not unusual. It only requires a consignee to render an account of his management of a consignor's property. "He holds himself out as a factor for the

management and sale of other people's property, and in that respect is like a public warehouseman." Hawthorn v. People, 109 Ill. 308,—a case in which a statute (much like the one at bar) requiring operators of butter and cheese factories on the co-operative plan to give bonds, and to make written reports of their business at the end of each month, was held to be constitutional, as a valid exercise of the police power.

3. But it is strenuously argued that this statute is void because it is discriminating or class legislation. In State v. Cooley, 56 Minn. 540, 550, 58 N. W. 153, it was said that class legislation is

"Legislation which selects particular individuals from a class, and imposes upon them special burdens, from which others of the same class are exempt, and thus denies them the equal protection of the laws."

But the class here created consists of those who engage in the business of receiving agricultural products and farm produce for sale, or receive or solicit the same for sale; in short, those who are engaged in the business of selling the same. The class is as broad as it need be. The peculiar characteristics of the agricultural products and farm produce already referred to, and the liability to peculiar abuses resulting from a sale thereof on commission, are such as to suggest the practical necessity for distinctive legislation on the subject,—different from what would be expedient or necessary in the case of other property sold on commission,—and to justify the legislature, in its discretion, in putting those who sell such articles on commission in a class by themselves. It was the evils which were thought incident to the sale of agricultural products and farm produce which evoked the law. Here was a class of merchants who for certain reasons, hereinbefore specified, had peculiar opportunities to defraud, not common to other merchants, although they might sell on commission, and it was this class that the legislature proposed to put under restraint.

Nothing is proven by arguing that there are other lines of business conducted in quite as objectionable a manner; for, if the argument had merit, it would follow that all kinds of business which

77 M.—32

need regulation must be legislated upon at the same moment. The legislature may proceed as the public welfare and prosperity of the citizens it represents may seem to demand. In this state the legislature has already regulated the method of conducting various kinds of legitimate business, and brought them under police enactments, as before stated. It has done this with respect to the business of insurance; it has required that bonds shall be filed and licenses obtained before any person shall undertake to conduct an employment bureau or agency; and it has compelled contractors upon public work to protect their employees and insure the payment of their wages by means of bonds, upon which those interested may maintain actions, if necessary. These illustrations of what has been done in the proper exercise of the police power of the state could easily be continued, but it would serve no good purpose.

One point made against this statute is that it distinguishes and discriminates as between the persons it seeks to operate upon, in that it arbitrarily requires those who sell grain to give bonds containing certain stated conditions, and to render certain statements and reports at once, while other persons brought within its influence must give bonds with wholly different conditions, and are not compelled to make these statements or reports. But there is an apparent and just reason for this distinction, as there is for distinguishing between the commission merchants mentioned in the law and other commission merchants; and it arises out of the peculiar conditions which surround the selling of grain, and to which we have before alluded.

The law was framed to meet the crying evils which it was believed had grown up in connection with this branch of business. The treatment of consignors was frequently most exasperating and injurious to them. Sometimes reports were never made of sales, and on other occasions were purposely delayed so that it would be difficult, if not impossible, for the consignor to ascertain the real facts of a given sale. Prices of grain fluctuated, not only from day to day, but from hour to hour. It might make a great difference to the consignor whether his grain was sold in the morning or near the close of the day. And for these reasons the law has therefore

studiously provided that the reports of sales shall state the day, hour, and minute when they are made. Such a provision was deemed a reasonable regulation in checking one of the alleged evils of the business,—an evil which could not be remedied without special effort in the way of conditions not necessary to impose upon merchants handling other products and produce on commission. So the grain commission man has no reason to complain because he is compelled to heed certain provisions of the law which are not to be observed by commission men who sell other articles covered by the statute, for the conditions surrounding the sale are entirely different. And this is the fact with reference to the shipper. He has no right to object on the ground that the law throws around the property of another shipper greater safeguards than he has, provided the property of the other is of such a character as to demand other and greater protection.

Counsel for relator assume that the statute is objectionable because the farmer who consigns cattle, wool, or hides is not protected at all, while his neighbor who ships wheat or potatoes is. Admitting that cattle, wool and hides are not agricultural products or farm produce, and therefore not covered by the law, we have no hesitation in saying that the conditions which surround the consignment and sale upon commission of those articles are radically different from those pertaining to the consignment and sale of grain or other property strictly within the act, and this difference justified the distinction, if one there be. The market price of cattle, wool, or hides does not fluctuate from hour to hour, as does that of wheat, nor are they as perishable in their nature as the ordinary products of the farm, and therefore the opportunity for imposition is not so great. There is good ground in many ways for the distinction, if it has been made by the law. This statute treats all persons subject to it alike under similar circumstances and conditions in respect both of the privileges conferred and the liabilities imposed.

The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions. It is only then that the discrimination can be said to

impair that equal right which all can claim in the enforcement of the law. Soon Hing v. Crowley, 113 U. S. 703, 705, 5 Sup. Ct. 730. And a law which is confined in its application to a particular class of persons is not void, as unequal class legislation, if the distinction is based on some reason of public policy, and applies to and embraces all persons alike under similar circumstances.

Finally, upon this point, it may be said that the requirement as to a bond does not affect the validity of the statute. Brass v. North Dakota, 153 U. S. 391, 14 Sup. Ct. 857,—an instructive case upon the subject herein involved; also Hawthorn v. People, supra.

4. It is objected that the statute is an unlawful and forbidden interference with interstate commerce.

It is well settled that a law cannot be deemed a regulation of commerce among the states merely because it may incidentally or indirectly affect it. Missouri, K. & T. Ry. Co. v. Haber, 169 U. S. 613, 18 Sup. Ct. 488. At most, this statute regulates the business of certain classes of commission men within this state, and is nothing but an ordinary police regulation, enacted in good faith, and intended to promote the general welfare and prosperity of the people within our borders. As was said in Hennington v. Georgia, 163 U. S. 299, at page 318:

"Such a law, although in a limited degree affecting interstate commerce, is not for that reason a needless intrusion upon the domain of Federal jurisdiction, nor strictly a regulation of interstate commerce, but, considered in its own nature, is an ordinary police regulation designed to secure the well-being and to promote the general welfare of the people within the State by which it was established, and, therefore, not invalid by force alone of the Constitution of the United States." See also Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154; Gladson v. Minn., 166 U. S. 427, 17 Sup. Ct. 627.

And it may further be observed that the statute does not in terms apply to interstate business, and it will not be implied that the legislature intended to go beyond its lawful powers in enacting it. If, therefore, it be held that the legislature could not forbid one to engage in the business of a commission merchant, as to interstate shipments, without compliance with the provisions of the state statute, such statute should be construed to apply only to a local

or domestic business; and such construction will be followed by the federal courts. Osborne v. Florida, 164 U. S. 650, 17 Sup. Ct. 214.

5. It is further contended that in this statute there is a delegation of legislative authority, in open defiance of the provisions of our state constitution. This is predicated upon the provision that the railroad and warehouse commission may fix the amount of the bond arbitrarily, and upon the assertion that it may capriciously accept a straw bond in one case, and refuse the best possible bond in another.

It is true that the amount of the bond and the sufficiency of the surety are to be determined by the commission, but the presumption is that this will be done in a proper and just manner, not as counsel would seem to contend. Fixing the amount of such a bond, and the requirements as to sureties, are purely administrative duties. It is necessary to lodge discretion somewhere, as manifestly it would be impracticable for the statute to prescribe the amount of bond for each of the numberless cases which arise. The possibility that the commissioners may not always act justly is no objection to the statute. Cooley, Const. Lim. 197. Laws containing provisions of this nature are very common in this state, as well as in other jurisdictions, and need not be specified, nor need attention be directed to decisions elsewhere upholding them; for the subject involved is discussed and disposed of in State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782.

6. It is also argued that section 3 is unconstitutional upon the ground that it violates the rights of the people of this state to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and also that it violates the provision that no person shall be compelled in any criminal case to be a witness against himself. We express no opinion upon the question, for it is not in the case. Conceding that the objectionable portions of section 3 are in direct opposition to the constitutional rights referred to, the law may stand, without these portions, as a full, complete, and enforceable statute. To the complaint on which the prisoner was arrested it is no defense to say that portions of section 3 are unconstitutional.

The court below ruled correctly in the proceedings, and, as pro-

vided in Laws 1895, c. 327, § 3, final judgment may be entered in this court discharging the writ, and remanding the prisoner to the custody of the sheriff of Ramsey county for further proceedings. Let judgment be so entered.

The following opinion was filed November 10, 1899:

PER CURIAM.

Counsel for relator in a petition for reargument urge two points to which brief reference should be made. The first is that, for the purpose of sustaining the classification as made in the law, the court announced that certain conduct on the part of persons who handled wheat on commission had become a matter of common talk among the people of the state, and this announcement, counsel insist, is wholly without foundation, and absolutely erroneous. Whether we were right or wrong in this is of no moment. The basis of the opinion, as is obvious from a reading, is that this particular business of selling agricultural products and farm produce is affected with a public interest, and is liable to abuse, and for these reasons is subject to police regulation by legislative act. Nothing more is necessary on this point.

The second point relates to the alleged arbitrary action of the railroad and warehouse commission when prescribing what is required of those who apply for licenses; copies of a circular letter issued by the commission and of the bond demanded being attached to the petition. It is enough to say on this point that this action cannot affect the validity of the law; and, further, that, if arbitrary and oppressive, there is an adequate and complete remedy in the hands of those who have cause for complaint.

Petition denied.