[No. 12535. *En Banc.* June 9, 1915.]

THE STATE OF WASHINGTON, *Respondent*, v. BOWEN
& COMPANY, INCORPORATED, *Appellant.*[1]

FACTORS—STATUTES — REGULATION — CONSTITUTIONAL LAW — DUE PROCESS—LIBERTY—POLICE POWERS. The commission merchants' act, Rem. & Bal. Code, §§ 7024-7035, directed against a class of factors or merchants whose principal business is that of selling farm, dairy, orchard and garden products on commission, who are defined as commission merchants and required to procure a license and furnish a bond, is a proper exercise of the police power of the state for the protection of health, safety, morals and welfare and the prevention of fraud, and hence does not violate any of the state or constitutional restrictions with respect to interference with liberty, equality, or the rights of property.

SAME—STATUTES—STRINGENCY OF ACT. The validity of the act is not subject to objection by reason of the stringency and difficulty of its requirements.

SAME—REGULATION—LICENSE. The fact that the main features of the act are the prevention of fraud, does not invalidate the provision requiring a license, since regulation by license is appropriate.

SAME—REGULATION—BONDS. The requirement of a surety company bond in the sum of $3,000 in order to obtain a license, is not unreasonable and invalid.

STATUTES—PARTIAL INVALIDITY. Upon a prosecution for transacting a commission business without obtaining a license, the unconstitutionality of other provisions of the act cannot be inquired into; since the invalid part may be disregarded where the act is valid in part and separable and capable of execution.

SAME—PARTIAL INVALIDITY. The act is not rendered invalid *in toto* by provisions for imprisonment for debt and recovery of attorney's fees in civil actions upon the bonds; since it may be assumed that the legislature would have enacted the body of the act independently of such questionable provisions.

[1]Reported in 149 Pac. 330.

SAME — PARTIAL INVALIDITY — INTERSTATE COMMERCE ACT. The act is not invalid as to commerce carried on wholly within the state because it contravenes the Federal constitution relating to interstate commerce when applied to interstate commerce.

MORRIS, C. J., CHADWICK, FULLERTON, and CROW, JJ., dissenting.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 16, 1914, upon a trial and conviction of violating the commission merchants' law, upon overruling a demurrer to the information. Affirmed.

*Bogle, Graves, Merritt & Bogle*, for appellant.
*John F. Murphy* and *H. B. Butler*, for respondent.

HOLCOMB, J.—Appellant was prosecuted in the superior court and convicted of a violation of chapter 139, Laws of 1907, p. 266 (Rem. & Bal. Code, §§ 7024-7035), known as the commission merchants' law, in having carried on the business of commission merchant without first having given bond and procured a license as required by said law. Appellant demurred to the information upon the ground that the act in question is invalid, unconstitutional, and void, for the reasons, (1) that it violates articles 4, 5, and 7, and § 1 of art. 14, of the amendments to the constitution of the United States, and §§ 3, 7, 9, 17, and 21 of art. 1 of the constitution of the state of Washington; and (2) that it is an attempt to regulate interstate commerce. The court overruled the demurrer. At the trial appellant admitted all the allegations of fact contained in the information, and also admitted additional facts not alleged, to wit, that, at the time in question, appellant's principal business was to sell farm, dairy, orchard, and garden products on commission, and that the person from whom he received the produce in question was then a resident of the state of Washington.

Appellant concedes the right of the legislature to pass proper laws reasonably tending to regulate such occupations and businesses as affect the health, safety, comfort, or welfare of the public in general, but insists that the business

attempted to be regulated by the law in question is a harmless and ordinary business or calling, and that to justify interference by the state with such occupation at least two conditions must clearly appear: (1) that the interests of the public generally, as distinguished from those of a particular class, require such an interference; and (2) that the regulation attempted is reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.

Appellant's brief, while being very forceful and presenting a painstaking review of the authorities upon the questions involved, follows no set order of presentation, and we shall not attempt to follow any set order.

Great reliance seems to be placed in the holdings of this court in the case of *State ex rel. Richey v. Smith*, 42 Wash. 237, 84 Pac. 851, 114 Am. St. 114, 5 L. R. A. (N. S.) 674, involving the plumbers' licensing law, and *In re Aubrey*, 36 Wash. 308, 78 Pac. 900, 104 Am. St. 952, involving the horseshoers' licensing law. Those cases are very illuminating and correctly state the principles of law applying to the regulation of businesses and callings under the police power of the state. The *Richey* case, as was stated by the court, per Rudkin, J., was where the law obviously attempted to place the control of the plumbing business in the hands of a board to be composed of two master plumbers and one journeyman plumber, who were given power to pass upon the qualifications of other persons desiring to follow that business, and there was no other end in view. The court there said:

"We are satisfied that the act has no such relation to the public health as will sustain it as a police or sanitary measure, and that its interference with the liberty of the citizen brings it in direct conflict with the constitution of the United States."

The same was true of the horseshoers' law, passed upon in the *Aubrey* case. Manifestly there was no relation between

the law there in question and the public health, peace, safety, or general welfare. As a general proposition, the questions of the wisdom, necessity, and policy of the law are for the legislature to determine, and if the legislature proceeds regularly, violating no other constitutional restriction or prohibition, the questions of fact as to the wisdom, necessity, and policy of the law are conclusively determined if a state of facts could exist which would justify the legislation in question. *Munn v. Illinois*, 94 U. S. 113; *Home Tel. & Tel. Co. v. Los Angeles*, 211 U. S. 265; *State ex rel. Beek v. Wagener*, 77 Minn. 483, 80 N. W. 633, 778, 1134, 77 Am. St. 681, 46 L. R. A. 442; *State v. Pitney*, 79 Wash. 608, 140 Pac. 918; *Carstens v. DeSellem*, 82 Wash. 643, 144 Pac. 934. Authorities could be multiplied to the same effect, but it is needless.

We may also give assent to the main proposition advanced by appellant, that the enjoyment upon terms of equality with all others in similar circumstances of the privilege of pursuing an ordinary calling or business and of acquiring, holding, and selling property, subject only to its civil liability for debt or damages and the right to contract in respect thereto, is an essential part of its rights of liberty and property, as guaranteed by the fourteenth amendment to the Federal and the corresponding provisions of our state constitution. But the Federal and state constitutional limitations were not designed to interfere with the exercise of the police power of the state for the protection of health, safety, morals, and welfare, and the prevention of fraud. The power which the legislature has to promote the general welfare is very great, and the discretion which it has and may exercise in the employment of means to that end is very large. True, it is not all powerful, while both its power and its discretion must be so exercised as not to impair the fundamental rights of life, liberty, and property, to the end that no man may be compelled to hold his life or the means of living or any ma-

terial right essential to the enjoyment of life, at the mere will of another,

"and in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage." *Yick Wo v. Hopkins*, 118 U. S. 356, 370.

The precise bounds of the police power have never been prescribed, nor will the courts attempt to define and prescribe its limitations rigidly. *Commonwealth v. Alger*, 7 Cush. 53; *State v. McFarland*, 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909; *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *State v. Somerville*, 67 Wash. 638, 122 Pac. 324; *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 120 Pac. 861, Ann. Cas. 1913 D. 78; *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645; *State v. Pitney*, 79 Wash. 608, 140 Pac. 918; *Carstens v. DeSellem, supra.*

Every possible presumption is in favor of the validity of the statute until the contrary is shown beyond a reasonable doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule. *Sinking-Fund Cases*, 99 U. S. 700; *Livingston v. Darlington*, 101 U. S. 407; *Powell v. Pennsylvania*, 127 U. S. 678; *State v. Carey*, 4 Wash. 424, 30 Pac. 729.

As to the exercise of the police power, it suffices in general to say that the courts will arrest the execution of the statute when it manifestly conflicts with the constitution, either state or Federal; but the courts cannot run a race of opinion upon points of right, reason, and expediency with the law-making power. Cooley, Constitutional Limitations (7th ed.), 236.

"It is true that equality of rights, privileges, and capacities should be the aim of the law, and if . . . special burdens or restrictions are imposed in any case it must be

presumed that the legislature designed to depart as little as possible from fundamental maxims of government." Cooley, Constitutional Limitations (7th ed.), 562.

The particular business here sought to be regulated is, of course, a legitimate and, in many respects, a necessary and important business. The business of producing farm, garden, orchard, and dairy products is one of the most important industries of the state. The producer cannot ordinarily be both producer and marketer. The legislature seems to have found that there exists a class of factors or merchants whose principal business is that of selling such produce on commission, and that certain abuses have grown up in that business; so, to provide regulation and prevent such abuses, the act in question was passed. Such an act, similar in most of the provisions, was sustained in Minnesota, in *State ex rel. Beek v. Wagener*, *supra*, and a similar act was also sustained in Illinois, in *Lasher v. People*, 183 Ill. 226, 55 N. E. 663, 75 Am. St. 103, 47 L. R. A. 802. A similar act in Michigan was held bad, in *People ex rel. Valentine v. Coolidge*, 124 Mich. 664, 83 N. W. 594, 83 Am. St. 352, 50 L. R. A. 493. Bringing to aid the presumptions in favor of the legislative power, and, also, the presumption that a state of facts exists which would warrant the selection of the persons or classes which this law hits, we believe that the reasoning in the Minnesota and Illinois cases is convincing.

"This objection to the law is not valid. The legislature has power to form classes for the purpose of police regulation, if they do not arbitrarily discriminate between persons in substantially the same situation. A discrimination must rest upon some reasonable ground of difference, but the classification in this case is a natural one. The commission merchants dealing in the kinds of produce named in this act, which constitute the small products of the farm, are of a different class from those who transact business in the great markets for the sale of grain, live stock and dressed meats." *Lasher v. People*, *supra*.

See, also, *McKnight v. Hodge,* 55 Wash. 289, 104 Pac. 504, 40 L. R. A. (N. S.) 1207, and cases there cited.

The law appears to be a very stringent and in some respects even drastic one, but the validity of a statute is not subject to objection because of the stringency or difficulty of its requirements. *Dent v. West Virginia,* 129 U. S. 114.

"It is not for the court to say that a constitutional law shall not have effect, because it is in the judgment of a court unreasonable." *Barton v. McWhinney,* 85 Ind. 481.

See, also, *People v. Worden Grocer Co.,* 118 Mich. 604, 77 N. W. 315; *Hamilton v. St. Louis County Court,* 15 Mo. 3; *State ex rel. Ornstine v. Cary,* 126 Wis. 135, 105 N. W. 792, 11 L. R. A. (N. S.) 174; *Point Roberts Fishing Co. v. George & Barker Co.,* 28 Wash. 200, 68 Pac. 438.

Nor does that part of the law requiring a license render the act void.

"The most proper business may be regulated to prevent its becoming offensive to the public sense of decency or for any other reason injurious or dangerous, and rules for the conduct of the most necessary and common occupations are prescribed when from their nature they afford peculiar opportunities for imposition and fraud." Cooley, Constitutional Limitations (7th ed.), 886.

See, also, 8 Cyc. 1067; 25 Cyc. 614.

The fact that this law in the main provides for prevention of fraud upon the customer of the commission merchant, assuming that the legislature found a state of facts requiring such regulations to prevent such fraud, renders the regulation by licensing, among other features, appropriate. The license fee here is small, not in any way oppressive or unreasonable, and for any revocation or threatened revocation of the license by the licensing authority, without just cause, relief is to be afforded by the courts.

Appellant insists that the requirement of the law, in order to obtain a license, that a surety company bond in the sum of $3,000 be furnished, is an unreasonable and invalid re-

quirement. It insists also that it is impossible of perform-
ance. The last contention is undoubtedly merely a conclu-
sion or statement of opinion. We have heretofore held, in
the case of *Ferguson-Hendrix Co. v. Fidelity & Deposit Co.*,
79 Wash. 528, 140 Pac. 700, that the provision of the law
requiring such bond in order to obtain a license is a valid
exercise of the police power of the state. It is urged, how-
ever, that that question was not involved and was not proper
to be decided in that case. *State ex rel. McKell v. Robins*,
71 Ohio St. 273, 73 N. E. 470, 69 L. R. A. 427, where a
similar statute in Ohio was not sustained, is cited in support
of appellant's contention. We cannot give our assent to the
reasoning or the conclusion in that case; and while it may
be true that the validity of this section of the law was not
involved in the *Ferguson-Hendrix* case, *supra*, yet we adopt
the reasoning in that case as supporting this provision of
the law.

The appellant urges the unconstitutionality of the other
provisions of the law to render the entire act void. We con-
ceive it to be the unquestioned rule that a person cannot in-
voke a constitutional objection to a part of a statute not
applicable to his own particular case. *Southern R. Co. v.
King*, 217 U. S. 524; *Engel v. O'Malley*, 219 U. S. 128;
*Standard Stock Food Co. v. Wright*, 225 U. S. 540; *Rosen-
thal v. People of New York*, 226 U. S. 260; *Darnell v. In-
diana*, 226 U. S. 390; *Cram v. Chicago, B. & Q. R. Co.*, 85
Neb. 586, 123 N. W. 1045, 26 L. R. A. (N. S.) 1028; *Wadin
v. Czuczka* (Ariz.), 146 Pac. 491. Unless a person's rights
are directly involved, courts will postpone inquiry into consti-
tutional questions which are separable therefrom until they
are met upon a question directly at issue, unless the unconsti-
tutional feature of it, if it exists, is of such a character as to
render the entire act void. *New York Cent. & H. R. R. Co. v.
United States*, 212 U. S. 481; *People v. Huff*, 249 Ill. 164, 94
N. E. 61; *Hammer v. State*, 173 Ind. 199, 89 N. E. 850, 140
Am. St. 248, 24 L. R. A. (N. S.) 795; *Wadin v. Czuczka*,

*supra.* But that a law may be valid in part and separable and capable of being executed, so that the invalid part may be disregarded, is a well settled principle of statutory construction. Lewis' Sutherland, Statutory Construction, 578, 579; Cooley, Constitutional Limitations (7th ed.), 246, 247; *Pullman State Bank v. Manring,* 18 Wash. 250, 51 Pac. 464; *Supervisors v. Stanley,* 105 U. S. 305.

The provisions in some sections of the act, for imprisonment for debt and for recovery of attorney's fees in suits upon the bonds provided for in the act, are matters not involved in this prosecution, and with which the appellant has no concern. We may well assume that the legislature would have enacted the body of the act providing for licensing and regulation of commission merchants regardless of the provisions for recovery of attorney's fees in civil actions upon the bonds and for prosecution and punishment for violation of *any* of the sections of the act. We, therefore, hold that, as to those sections, whether they are or are not unconstitutional and void, the provisions, so far as involved in this prosecution, are entirely independent and separable therefrom; and if said sections should be determined to be unconstitutional and void, such determination and the elimination of such provisions would not affect the remainder of the act.

The same reasoning applies to the contention of the appellant that the law contravenes the provisions of the Federal constitution relating to interstate commerce. So far as the present case is concerned, there is no issue involving rights under the interstate commerce clause of the Federal constitution. However, the question whether a statute applies to interstate commerce depends upon the actual operation; and a statute which is void as to interstate commerce may be valid as regards commerce which is carried on wholly within the state. 21 Am. & Eng. Ency. Law (2d ed.), 792; *State ex rel. Beek v. Wagener, supra.*

Other matters are discussed by appellant which are not involved in the prosecution and are not, in our opinion, to be

passed upon in this case. We cannot say that the act, so far as it applies to the facts upon which appellant was prosecuted, is palpably in violation of any of the provisions referred to in the Federal or state constitution.

The judgment is therefore affirmed.

PARKER, MOUNT, MAIN, and ELLIS, JJ., concur.

CHADWICK, J. (dissenting)—No one can take exception to the abstract propositions stated in the majority opinion. They require no citation of authority. Granting that the *Ferguson-Hendrix Co.* case was correctly decided, the real question in this case was not even discussed in that opinion. The *Ferguson-Hendrix Co.* case decided nothing more than that the provision of the commission merchant law requiring a surety bond was constitutional. It did not assume to pass upon other provisions of the law.

The power of the state to pass laws to preserve the peace, to protect the health and safety of the citizen, and promote his welfare is axiomatic. That such laws must be general in their application is admitted. It does not follow that, in the application of its power, the state cannot make classes. But it is equally true that the state cannot make classes or a class within a class, unless the class to which the law is made to apply and the distinction drawn bears some reasonable relation to the evil sought to be cured. In this case the evil sought to be remedied is the impositions practiced upon the producers of farm and dairy products who live at a distance from the market places and who are, perforce of that circumstance, compelled to trust their commodities to those who sell their goods on commission.

Granting that it is within the power, as is held by the majority and as I admit, of the state to provide that all commission merchants must take out a license and must give a bond, and make the report required by the statute and subject their books to the inspection of all who are interested, the real point in this case is not whether that can be

done, but whether the legislature can say that it shall be done by some commission merchants and not by others.

Section 16 of the act defines commission merchants. It says that commission merchants within the meaning of this act are those whose *principal* business is dealing in farm and dairy products. Unless we can find some reason for the distinction between those who are doing some of their business with the farmers and dairymen and those who are doing the principal part of their business with farmers and dairymen, the law cannot be sustained. What is the test? A reference to the evil and the proposed remedy. Under the law, a man or firm who is doing a $100,000 business, $40,000 being with goods consigned from farmers and dairymen, and $60,000 in flouring mill products, commercial food stuffs and fruits from foreign shipments, would clearly be exempt because the principal part of his business is not with farmers and dairymen. On the other hand, if a firm does a business of $10,000, all or the major part of which is with the farmers and dairymen upon consigned goods, he is subject to the law because it is the principal part of his business. If a grower ships a ton of potatoes to the man who does the $100,000 business, his farm consignments being the smaller part of the business, and at the same time ships a ton of potatoes to the man who does the $10,000 business, it being all with the farmers and dairymen, can it be said that there is any reasonable ground upon which to rest the distinction made by the law? Is not the farmer just as liable to imposition from the man who is doing the lesser part of his business in farm and dairy products as he is from the man who is doing the greater part? It follows that no reasonable ground for the distinction can be drawn.

This principle was noticed and adhered to by this court in the Spokane employment agency case, *Spokane v. Macho*, 51 Wash. 322, 98 Pac. 755, 130 Am. St. 1100, 21 L. R. A. (N. S.) 263. We there said:

2—86 WASH.

"When exercising its power to regulate a business, the municipality may classify subjects of legislation, but the law must treat alike all of a class to which it applies, and must bring within its classification all who are similarly situated or under the same condition."

We also quoted from the case of *State v. Sheriff of Ramsey County*, 48 Minn. 236, 51 N. W. 112, 31 Am. St. 650:

"The classification must be based on some reason suggested by a difference in the situation and the circumstances of the subjects treated, and no arbitrary distinction between different kinds or classes of business can be sustained, the conditions being otherwise similar."

We also quoted the principle from the case of *Tugman v. Chicago*, 78 Ill. 405:

"An ordinance which would make the act done by one penal and impose no penalty for the same act done under like circumstances by another, could not be sanctioned or sustained because it would be unjust and unlawful."

Other cases and McQuillin, Municipal Ordinances, 193, were cited to sustain our opinion. Under this case and all the elementary rules of law, the distinction made by the statute must be sustained by the *character* of the act and not by the extent of the act, or the *amount* of business done by those against whom the law is directed. Indeed, this case is an aggravated violation of the rule, for the one who does a lesser part of his business with the farmer and dairyman may in fact be the worst offender.

The *Macho* case was followed in *Seattle v. Dencker*, 58 Wash. 501, 108 Pac. 1086, 137 Am. St. 1076, 28 L. R. A. (N. S.) 446, and *State v. Robinson Co.*, 84 Wash. 246, 146 Pac. 628. See, also, *State v. McFarland*, 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909. It is possible that a law providing that all commission merchants having transactions with farmers and dairymen exceeding in amount a certain sum could be sustained as a proper classification, but to hold that the aggregate amount of business done with the farmer and

dairyman is a basis of classification cannot be sustained by reason or authority. They might just as well say that dry goods merchants dealing with farmers and dairymen should give a bond as a precaution and remedy against imposition and that hardware merchants should not.

"A much worse discrimination would be a discrimination between citizens of the same class engaged in the same business, where there is no reason suggested by the difference in the situation and circumstances of the subjects treated; for not only is the business in this case similar and identical, but it is purely and simply a difference in the mode of transacting the business [amount of business], a mode which cannot possibly affect any principle or affect deleteriously the consumer or purchaser of the article sold." *Seattle v. Dencker, supra.*

Neither can it be said that § 16 of the act can be held to be unconstitutional and the rest of the act remain. Section 16 is the very cap-stone of the arch. Without it there could be no law, for the legislature in that section says who are and who are not commission merchants within the meaning of the statute. Following the rule and construction laid down by us in the stock food case, *State v. Robinson Co., supra,* and by all courts when a similar question has been presented, we must presume that the law would not have been passed unless a section had been included exempting a certain class within a class. Otherwise no reference would have been made to the character and amount of business done. The law would have been complete without it. Answering a similar contention made in the stock food case, we said:

"The Attorney General further argues that, if § 13 (Id., § 6022) is void, it may be excluded from the act, and the balance of the act may still remain a valid law. But it is apparent that § 13 (Id., § 6022) is a material part of the act. It is more than probable that if this section had not been inserted the act would not have passed. It was inserted for the purpose of excluding cereal and flouring mills from the operation of the act. To say that this section is

unconstitutional and does not affect the remainder of the act is to say that every person, firm or corporation is bound to comply with the terms of the act, when the legislature itself has said that cereal and flouring mills are not bound by the act. In short, to hold this section void and the rest of the act valid is to determine, in face of an express statement of the legislature to the contrary, that the act applies to all persons dealing in concentrated commercial feeding stuffs."

The statutes in Wisconsin, Illinois and Minnesota are not the same as ours. They do not make a class within a class. The statutes in each of those states cover "every," "any" and "all" "persons, firms and corporations" dealing in farm products on commission. Undoubtedly the power to classify all who are so engaged is within the power of the legislature. In *State ex rel. Beek v. Wagener*, 77 Minn. 483, 80 N. W. 633, 778, 1134, 77 Am. St. 681, 46 L. R. A. 442, the court, after finding that a law controlling commission merchants was constitutional, noted some of the abuses calling for the law, and of the sale of farm products, said:

"And, with respect to other agricultural products and farm produce, it is to be observed that they are largely of a perishable nature, and subject to rapid deterioration in transit, or after reaching the consignee. This fact gives to the latter an opportunity to falsify his report of a sale to the distant consignor, and to insist that the article consigned had become more or less unmarketable before sale could be made; and here, as in the case of grain, the latter has little or no opportunity to ascertain the truth. Without wishing to intimate that fraud of this nature had actually become so prevalent as to justify the accusation made, we do say that a majority of the people in this state had become convinced of the truth of these charges, and in great numbers besieged the legislature in behalf of the suppression of the alleged evil practices. This was a matter of common knowledge. It was publicly believed that the business of selling agricultural products and farm produce on commission had become saturated with false and fraudulent methods, to the great injury of a large class of our citizens, who were compelled to deal with commission men, and who were powerless to detect

or prevent the wrong, and that the business had thus become sufficiently affected with public interests as to be the proper subject of police regulation."

The principle of the law is right, but it cannot be sustained under an act making the things complained of penal in one class and not in another. It seems to me that a joker was deliberately slipped into the law.

For these reasons, I dissent.

MORRIS, C. J., FULLERTON, and CROW, JJ., concur with CHADWICK, J.