HARRIS v. STATE ex rel. OKLAHOMA PLANNING AND RESOURCES BOARD.

No. 35200.   Dec. 23, 1952.

*251 P. 2d 799.*

George, George & Springer, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

WELCH, J.  This is an action brought by the State of Oklahoma ex rel. Okla-

homa Planning and Resources Board against Bruce Harris to enjoin him from operating a houseboat on Lake Murray. It is alleged in the petition that the boat is being operated by defendant, Harris, without a permit and in violation of the rules and regulations adopted by the Board.

Defendant relies as a defense on the doctrine of estoppel and makes the further defense that the Planning and Resources Board was not authorized by statute to adopt the rules and regulations relied on by plaintiff; that they were adopted contrary to the provisions of the statute and that the rules and regulations adopted are unreasonable and arbitrary and therefore invalid. It is alleged in the answer that defendant, Harris, constructed the boat at a cost to him of about $2,500; that it was constructed with the knowledge and consent of the lake patrolmen then in charge and that he agreed that the boat might be operated upon the lake; that the boat will be valueless to him unless he be permitted to use it on the lake and will result in great damage to him and deprive him of his property without due process of law. It appears from the evidence that the boat in question was constructed by defendant, Harris, in the summer of 1948, and that it was constructed with the knowledge and consent of the lake patrolmen then in charge; that he stated he knew of no rule then in existence which would prohibit the use of such boat on the lake, and he saw no reason why it could not be used on the lake. A permit to operate the boat on the lake was then issued to defendant by a park employee under the direction of the lake patrolman who was authorized to issue permits. The permit issued expired on December 31, 1948. After the expiration of such permit defendant made frequent attempts before the Board to obtain a renewal permit for the years 1949 and 1950, but the Board refused to grant renewal permits. Thereafter the lake superintendent notified defendant, Harris, that if the boat was not removed from the

lake within five days after the date of the receipt of the notice it would be removed by the lake superintendent. Mr. Harris, defendant herein, then filed suit in the district court of Carter county against the lake superintendent to enjoin the removal of said boat from the lake and to obtain a permit therefor. This case, however, for some reason was never brought to trial. Thereafter the Board filed this action in the same court to enjoin the operation of said boat on the lake and to compel its removal therefrom.

The Planning and Resources Board was created by the Legislature in 1935, S. L. 1935, page 87. The Act was several times amended and as amended now appears in 74 O.S. 1951 §§344.9 to 360.2, inclusive. The Act by various sections divided state planning into different divisions which divisions are placed under the management and control of the Planning and Resources Board, among which is the division of State Parks.

In performing its duty under this provision the Board, by section 356.1, is declared to be a governmental agency and instrumentality of the State of Oklahoma with authority to exercise, in addition to those it now has, the rights, privileges and functions thereafter specified. The Board is prohibited from creating any indebtedness payable out of taxes or assessments, and is prohibited from pledging the credit of the state for the payment of any indebtedness created by it. The additional powers granted the Board under said section are set forth in section 356.2, subdivisions 1 and 2, and are as follows:

"1. To have the exclusive possession and control of, and to control, operate and maintain for the benefit of the people of the State of Oklahoma all state parks and all lands and other properties now or hereafter owned by the State for park or recreational purposes.

"2. To acquire by purchase, lease, gift, condemnation or in any other manner and to maintain, use and operate any and all property, real, personal or

mixed, necessary or convenient to the exercise of the powers, rights, privileges and functions conferred upon it by this Act. Title to all such property shall be vested in the State of Oklahoma although such property is sometimes herein referred to as property 'of the Board.' The power of condemnation herein granted shall be exercised in the manner provided by the general laws of the state for the condemnation of property by the state."

Subdivision 3 authorizes the board to lease from time to time any property which it shall determine advisable to more fully carry into effect the duties and powers of said board. Under subdivision 5 it may sue and be sued. Under subdivision 8 it is authorized to appoint officers, agents, and employees and prescribe their duties and fix their compensation. Under subdivision 10 it is given authority to adopt rules and regulations in order to carry into effect the provisions of the Act. This subdivision as far as here material provides:

"10. To prescribe and enforce rules and regulations for the use of all recreational and other facilities and properties of the Board, including the restriction or prohibition of the use of firearms, the inspection of boats, the issuance of permits for the operation of water craft of all kinds, the charging and collection of fees for the inspection and for the operation of such craft, prescribing the type, style, location and equipment of all wharves, docks, anchorages, pavilions, restaurants and other structures or buildings which may be constructed along shores or upon the waters of any body of water or upon other property controlled by the Board, and providing for the licensing, inspection and supervision of the same, and granting and imposing charges for permits for all commercial uses or purposes to which any of the properties of the Board or any structures or buildings located on property of the Board, may be used. * * *"

The Board in 1938 adopted rules and regulations regulating the character and kinds of boats or water craft that should be permitted to be used and operated on state lakes. On the 30th day of August, 1949, it adopted an additional regulation which provides that no permit shall be issued permitting the use of any barge, raft or houseboat on Lake Murray. We shall later discuss these rules and regulations.

At the conclusion of the evidence the trial court found that the Board was acting in a governmental capacity and in the performance of governmental functions in its supervision and operation of Lake Murray and the various installations in said park; that the Board was given authority under Oklahoma statutes to promulgate rules and regulations prohibiting the use and operation of the Harris boat on Lake Murray and the operation of said boat on the Lake constituted an unlawful and illegal act and upon these findings entered an order and judgment enjoining defendant, Harris, from operating the boat on the lake and compelling its removal therefrom.

Defendant appeals and asserts that the judgment is not sustained by the evidence and is contrary to law.

Defendant asserts the evidence clearly shows that the boat in question was built on the lake with the approval and consent of the authorities in charge of the lake at that time, and with full knowledge on their part that Mr. Harris expected to operate the boat on the lake during the life of said boat, and that said Board is now estopped from asserting that the boat should be removed from the lake.

It is the contention of plaintiff, Planning and Resources Board, that the state in the exercise of the control and management of said property for the use and benefit of the people of the state, and in the maintenance of its state parks and recreational facilities, including lakes in said parks, was acting in a governmental capacity and that the doctrine of estoppel may not be invoked against the state when acting in a governmental capacity. On the other hand, defendant contends that while engaging in the activities au-

thorized by the Act the state was acting in a proprietary capacity and the doctrine of estoppel may therefore be invoked against it to the same extent that it may be invoked against private individuals. Numerous authorities are cited by him to sustain this contention.

We do not, however, deem it necessary to a decision in this case to pass upon the question as to whether the state in performing the duties and engaging in the activities authorized by the Act was acting in a proprietary or governmental capacity for the reason that in either event, under the evidence in this case, the doctrine of estoppel relied upon by defendant may not be invoked.

Defendant bases his estoppel solely upon the statements, acts and conduct of the lake patrolman in charge at the time the boat was constructed and the permit issued, and asserts that, by such statements, acts and conduct the plaintiff in effect impliedly agreed and consented that the boat might be operated on the lake during the life of the boat.

The patrolman, however, under the evidence in this case, was without authority to make such statements, or by his act and conduct to impliedly agree or consent that the boat might be operated on the lake during the life of the boat. The evidence shows that he was authorized to issue permits for the operation of boats on the lake after they had been inspected by the lake superintendent and such was the extent of his authority. Defendant cannot therefore base an estoppel upon his unauthorized acts and conduct.

1 A.L.R. 2d 344 announces the following rule:

"The state cannot be estopped by the unauthorized or fraudulent acts or admissions or conduct of its officers; or by their mistaken or erroneous statements or opinions; or by their omission or neglect."

Numerous authorities appearing in the annotation support the above rule.

In Strand et al. v. State et al., 16 Wash. 2d 107, 132 P. 2d 1011, the rule is thus stated:

"The principle of 'estoppel' will not apply to unauthorized or ultra vires acts of state officials regardless of whether the state acts in a proprietary or governmental capacity."

And in the case of State ex rel. Com'rs of Land Office v. Frame et al., 200 Okla. 650, 199 P. 2d 215, this court held:

"Those who deal with state officers are bound to know extent of their authority. The state cannot be estopped by the unauthorized acts of its officers."

Under the evidence and the above authorities, defendant's plea of estoppel cannot be sustained.

Defendant specifically challenges the regulation adopted by the Board in 1949, which provides that no permit shall be issued permitting the use of any barge, raft or houseboat on Lake Murray. This regulation was in force at the time this action was brought.

It is the contention of defendant that the adoption of this regulation was not authorized by the statute, but is contrary to the plain provisions of section 356.2, supra. He refers to that part of the section which authorizes the Board to issue permits for the operation of watercraft of all kinds and asserts that this provision of the statute requires the Board to issue permits for the operation of houseboats on the lake. We do not agree. The statute authorizes the Board to prescribe and enforce regulations for the inspection of boats and for the issuance of permits; therefore, if upon inspection it be found that a certain character or type of boats may not be safely operated on the lakes of the state, the Board has the authority under authorized rules to refuse to issue a permit for the operation of such boats. Such must have been the intention of the Legislature when it authorized the Board to prepare and enforce regulations for the

inspection of boats. To hold otherwise would render inspection a mere idle gesture and useless. We decline to so construe the statute.

It is, of course, true that the Legislature has no authority to delegate power to an administrative board to make laws, but it may delegate to such Board the authority to prescribe and enforce rules and regulations to carry into effect and to aid in the enforcement of existing laws. In Rush v. Brown, 187 Okla. 97, 101 P. 2d 262, and other cases, we have held:

"The power to determine the policy of the law is primarily legislative, and cannot be delegated, whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions although partaking of a legislative character, is in its dominant aspect administrative and can be delegated."

In E. W. Williams v. Eliza P. Evans et al., 139 Minn. 32, 165 N. W. 495, it is said:

"The Legislature cannot delegate legislative power, but it may delegate authority or discretion to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend."

The court in that case further said:

"* * * The Legislature may, however, delegate to a commission the power to do some things which it might properly, but cannot advantageously, do itself. State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 299, 37 N.W. 782; Wayman v. Southard, 10 Wheat. 1, 42, 6 L. Ed. 253. It may vest in a commission authority or discretion to be exercised in the execution of the law. State v. Chicago, M. & St. P. Ry. Co., supra; State v. Wagener, 77 Minn. 483, 80 N.W. 633, 778, 1134, 46 L.R.A. 442, 77 Am. St. 681; State v. Great Northern Ry. Co., 100 Minn. 445, 111 N.W. 289, 10 L.R.A. (N.S.) 250; Borgnis v. Falk Co., 147 Wis. 327, 358, 133 N.W. 209, 37 L.R.A. (N.S.) 489. It may delegate power to determine some fact or state of things upon which the law makes its own action or operation depend (Locke's

Appeal, 72 Pa. St. 491, 13 Am. Rep. 716; Union Bridge Co. v. U.S., 204 U.S. 364, 383, 27 Sup. Ct. 367, 51 L. Ed. 523), and may declare its law shall be operative or applicable only upon the subsequent establishment of some fact. * * *'"

Defendant further contends that there is no evidence tending to establish that the boat in question was or is a hazard to the safety or general welfare of the public and that the regulation in question is an attempted arbitrary and unreasonable exercise of power and operates to deprive him of his property without due process of law.

We think the evidence is sufficient to establish that the boat in question may not be safely operated on the lake. In this respect Mr. Chiles, State Park Director, testified that the boat in question consisted of a cabin floated on a raft with barrels under it. A barge type boat. It is mounted on oil drums. It is liable to sink and that the boat cannot be safely operated on the lake. On cross-examination the witness stated:

"Q. Why do you say it is not safe? A. You can't make a boat safe with those barrels there. If you fasten them in and the barrels fill with water, you have no way of inspecting those barrels and they will fill. If you leave them loose they will drop out when they get a leak, and fill with water. I think the thing will jump off the barrels."

We think this evidence sufficient to establish that the boat in question is or may be a hazard to the safety and general welfare of the public and that the boat cannot be safely operated on the lake. The contention that the regulation in question is unreasonable and arbitrary and deprives defendant of his property without due process of law can not be sustained.

Defendant further asserts that the regulation relied upon by plaintiff was not in existence at the time the permit above referred to was issued and was not in existence at the time the boat in question was constructed and that the regulation later adopted by the

Board could therefore not be constitutionally applied as against him to the boat in question. This contention cannot be sustained. Lake Murray, upon which the boat was being operated, belongs to the state. Defendant had no right to operate the boat on the lake without the consent of the state. The state granted its consent upon the obtaining of a license or permit and paying the required fee under regulations prescribed by the Planning and Resources Board to operate the boat on the lake. Defendant, however, acquired no vested right to continue to operate the boat on the lake during the lifetime of the boat by reason of the permit issued in 1948. The mere fact that the Board had issued to him a license or permit for that year did not obligate it to renew the permit for all future years during the life of the boat. The Board had the right to adopt the new regulation in question and in doing so it violated no constitutional rights of defendant. In 17 R.C.L. p. 476, sec. 5, the following rule is announced:

"Following the general principle that a license is not a contract, it is clear that it does not in itself create any vested right, or permanent right, and that free latitude is reserved by the legislature to impose new or additional burdens on the licensee, or to alter the license, or to revoke or annul it. And this is the general rule notwithstanding the expenditure of money by the licensee in reliance thereon, and regardless of whether the term for which the license was given has expired. * * *"

The judgment of the trial court is sufficiently supported by the evidence and is not contrary to law.

Affirmed.

HALLEY, V.C.J., and CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.