Roy ISAACS for himself and others similarly situated, Plaintiff in Error,

v.

OKLAHOMA CITY, a Municipal Corporation, Urban Renewal Authority, Granville Tomerlin, Chairman, F. D. Moon, Vice-Chairman, C. Kenneth Woodard, Secretary, Reuben G. Martin, Member, Ralph L. Bolen, Member, James T. Yeilding, Executive Director, Defendants in Error.

S. M. ROOF, Loal C. Wilson and J. V. Garrett, Plaintiffs in Error,

v.

TULSA URBAN RENEWAL AUTHORITY, a purported public body corporate, of Tulsa, Oklahoma, and Its Officers and Members, Leeman Nix, Chairman, Robert Laird, Vice-Chairman, Murray McCune, Member, Paul Chapman, Executive Director and Secretary, and the City of Tulsa, Oklahoma, a Municipal Corporation, Defendants in Error.

Nos. 41276, 41527.

Supreme Court of Oklahoma.

Dec. 27, 1966.

Rehearings Denied March 21, 1967.

Second Rehearing Denied April 17, 1967.

Certiorari Denied Oct. 9, 1967.
See 88 S.Ct. 63.

Sid White, Oklahoma City, and Ted R. Fisher, of Johnson & Fisher, Tulsa, for plaintiffs in error.

Roy H. Semtner, Horace Thompson, Oklahoma City, for defendant in error City of Oklahoma City.

V. P. Crowe and Paul R. McDaniel, of Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, and Coleman Hayes and Russell F. Thompson, of Monnet, Hayes, Bullis, Grubb & Thompson, and J. Dan Batchelor, Oklahoma City, for defendant in error, Urban Renewal Authority.

Smith & Brown, and Chas. E. Norman, by Finis Smith, Tulsa, for defendants in error, Tulsa Urban Renewal Authority.

T. Murray Robinson and Wm. N. Christian, of Robinson, Robertson & Barnes, Oklahoma City, for S. D. Rorem, amici curiae.

HALLEY, Chief Justice.

There are two cases involved here, which because of the similarity of issues, have, by our order of November 10, 1966, been consolidated for decision.

The first case is an appeal from the judgment of the District Court of Oklahoma County in sustaining a demurrer to the petition of Roy Isaacs, plaintiff in error here, who, for himself and others similarly situated, filed a declaratory judgment action against the defendants in error, the City of Oklahoma City, a municipal corporation, the Urban Renewal Authority and the individual members of the Authority's Board of Commissioners and its executive director, seeking a declaration of the unconstitutionality of the Urban Redevelopment Law, 11 O.S. 1961, Section 1601 et seq., and for injunctive relief.

The second case is an appeal from the District Court of Tulsa County in sustaining the demurrer of the defendants in error, Tulsa Urban Renewal Authority and its officers, and the City of Tulsa, Oklahoma to the petition of the plaintiffs in error, S. M. Roof, L. C. Wilson and J. V. Garret. As in the Oklahoma City case, plaintiffs in error, in the Tulsa case sought a declaratory judgment against the Tulsa Urban Renewal Authority, its officers, and against the City of Tulsa, Oklahoma, decreeing the creation of the Tulsa Urban Renewal Authority under the provisions of 11 O.S.1961, Section 1601–1620, to be void and violative of certain provisions of the Oklahoma Constitution, and for injunctive relief.

In the Oklahoma City case, all defendants in error filed motions to strike and to make more definite and certain with respect to the petition of plaintiff. These motions were sustained in part and overruled in part by the trial court. Accordingly, the plaintiff in error filed an amended petition, to which each of the defendants in error demurred. All demurrers were sustained by the trial court and the Urban Redevelopment Law was held to be constitutional. Plaintiff in error filed his motion for a new trial, which was overruled, and he thereupon perfected his appeal here.

In the Tulsa case, the general demurrer to plaintiff's in error petition was sustained. Plaintiff's in error elected to stand on their petition. The trial court dismissed the action. Plaintiffs in error filed a motion for a new trial, which was overruled. Plaintiffs in error thereupon lodged their appeal here.

For convenience, plaintiffs in error in both cases shall be referred to herein as

plaintiffs and the defendants shall be referred to by their respective names, if necessary.

The statutory provisions under attack, 11 O.S.1961, Sec. 1601–1620, covers some thirty pages in the statutes, and we do not deem it necessary to set out the act in full, but reference will be made herein to the various sections of the act.

Generally it may be said, as stated in Section 1604 of the act, that the over-all purpose of the act is to enable certain cities to take steps to eliminate slum and blighted areas which constitute a serious and growing menace to the public health, safety, morals and welfare of the citizens of the state, the elimination of which is declared to be a matter of public interest.

Many grounds are asserted by plaintiff for the unconstitutionality of the act, which we number and will discuss consecutively, for convenience and to meet the method of presentation.

Plaintiff, as his first ground, contends that the act attempts to confer legislative, executive and judicial authority upon the city and the authority. Other courts, in discussing this objection to similar Urban Renewal Acts, have uniformly rejected this contention, where the legislature has adopted the policy and set forth the guide lines which are to be utilized by the cities and the authority. The Supreme Court of Kansas, in the case of State ex rel. Fatzer v. Urban Renewal Agency of Kansas City, 179 Kan. 435, 296 P.2d 656, had the following to say about this point:

"We think it clear that while the legislature cannot delegate its constitutional power to make a law, it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative. In other words, the legislature may enact general provisions but leave to those who are to act certain discretion in "filling in the details," so to speak, provided, of course, it fixes reasonable and definite standards which govern the exercise of such authority."

In addition thereto, we have consistently held in the past, in a variety of factual situations that the legislature has no authority to delegate power to an administrative board to make laws, but it may delegate to an administrative board the authority to prescribe and enforce rules and regulations to carry into effect and to aid in the enforcement of existing laws. See Rush v. Brown, 187 Okl. 97, 101 P.2d 262, and also in the case of Harris v. State, ex rel. Oklahoma Planning & Resources Board, 207 Okl. 589, 251 P.2d 799, we quoted with favor the following:

"The Legislature cannot delegate legislative power, but it may delegate authority or discretion to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend."

The same argument was made in connection with the establishment of the Oklahoma Turnpike Authority, and in that case, styled Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795, we likewise held that such delegation of authority by the legislature to the Turnpike Authority did not violate the constitutional provision forbidding the delegation to any one of any of the powers of the state. We therefore hold that the first contention of the plaintiff to be without merit.

For his point No. 2, plaintiff asserts that the act allows a city and an authority to condemn land and property for other than public purposes. The Supreme Court of the United States, in the case of Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27, (1954) passed upon the validity of the Urban Renewal Act of the District of Columbia. In connection with a similar objection raised as to the District of Columbia Act, the Court stated:

"Once the object is within the authority of Congress, the right to realize it through the exercise of eminent domain is clear. For the power of eminent domain is merely the means to the end. * * * Here one of the means chosen is the use

of private enterprise for the redevelopment of the area. Appellants urge that this makes the project a taking from one businessman for the benefit of another businessman. But the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established. * * * The public end may be as well or better served through an agency of private enterprise than through a department of government or so the Congress might conclude. We cannot say that public ownership is the sole method of promoting the public purposes of community redevelopment projects."

Likewise, the Kansas Court, in State ex rel. Fatzer v. Urban Renewal Agency of Kansas City, supra, stated:

"It is elementary that the legislature possesses no power to authorize the appropriation of one's property for a private use or purpose, but it is equally well settled that the right to take private property for a public use is inherent in the state, and that the legislature may authorize the acquisition and appropriation of private property for a public use provided the owner is compensated therefor."

In this connection see also Delfield v. City of Tulsa, 191 Okl. 541, 131 P.2d 754, 143 A.L.R. 1032.

Section 1604 of the act in question makes it clear that the purposes for which property may be condemned are public purposes, and we hold therefore, that plaintiff's second point is not well taken.

■ Plaintiff, for his 3rd point, maintains that the act confers on the city and the authority the power to arbitrarily ascertain and declare public purpose, without definite standards. This contention is not supported by a reading of the act. Sections 1603(g) (h), 1604, 1605 and 1607 make it apparent that neither the city nor the authority have the power to arbitrarily ascertain and declare public purposes. These sections set forth clear and definite standards to be followed. Similar standards were approved in

the Berman v. Parker case, supra. We find that this is not a valid objection.

■ For his 4th objection, plaintiff argues that the act allows the city to "judicially" determine blighted areas. The act does authorize the city to declare and identify blighted areas, but only according to the standards set forth in the act. Such determination is manifestly not an exercise of "judicial" authority. There is no "judicial" authority conferred upon the city by the act.

■ As objection No. 5, the plaintiff contends that the act allows the city and the authority to condemn property and then to sell it to private interests. A review of the authorities indicates that this is one of the most frequently raised objections to Urban Renewal Acts. Without exception, redevelopment programs have been upheld against this type of objection, usually on the grounds that the public use or public purpose is legitimately served by the legislative object of slum or blighted area clearance, and the fact that private interests benefit incidentally or that private parties acquire ownership after the public purpose of the elimination of the undesirable conditions has been served, is merely incidental to the main legislative purpose. Some 21 cases are cited by the annotator in 44 A.L.R.2d 1414, at page 1420, including the Berman v. Parker case, supra, rejecting the argument raised by plaintiff herein under his 5th point. We therefore, in accord with the weight of authority, hold plaintiff's 5th objection to be without merit.

■ Plaintiff, in his 6th objection, asserts that the act gives to the city and the authority the power to create indebtedness and to issue bonds, all in violation of the Oklahoma Constitution. He further asserts that the act unconstitutionally empowers the city or the authority to create debts. Plaintiff is correct in his assertion that the act gives to the city the power to establish means for the financing of redevelopment programs, and also that the act grants to the authority the power to issue revenue bonds. However, such power, granted by the act to either the city or the authority, is not in derogation of the Constitution of Oklahoma,

but is in accord with it. Section 1611(e) of the act permits a city to issue and sell its general obligation bonds, but only in accordance with the limitations prescribed by the laws of the state. Section 1610(k) (5) and (6) forbids an authority to issue general obligation bonds, but Section 1616(a) authorizes an authority to issue revenue bonds and sub-section (b) provides that such revenue bonds shall not constitute an indebtedness of the state or any city. Also the purchasers of such bonds would be charged with knowledge that the bonds would not constitute an indebtedness of the state or any city. We must presume that any city or authority, issuing either general obligation bonds or revenue bonds would comply with the laws of the state with reference thereto. The legislative enactment is satisfactory as to form and content. We therefore find nothing of substance in plaintiff's 6th objection.

For his 7th point, plaintiff maintains that the act is invalid because it allows a city or the authority to exempt property from taxation. This position is not supported by the terms of the act itself. Section 1615 provides for the exemption of property from taxation which is owned by the authority, but Section 1615(b) provides that such exemption is valid only as long as the authority owns the property. A similar contention was raised in the Oklahoma Turnpike case, supra, and there we held contrary to the position of the plaintiff. We so hold here, and find that plaintiff's contention is without merit.

Next, for point No. 8, plaintiff maintains that the act, in effect, precludes judicial review of findings made by a city or an authority. This contention is without merit, as the act, in Section 1613, sets out the manner in which there may be a judicial review of the actions of either the city or an authority.

Plaintiff, for his 9th point, asserts that the act is so vague and indefinite as to violate due process of law. A careful examination of the act reveals that the legislature has set forth definite and certain standards in the act in such a degree as to nullify any objection of indefiniteness, and we therefore hold that plaintiff's point No. 9 is without merit. See Herzinger v. Mayor and City Council of Baltimore, 203 Md. 49, 96 A.2d 3, 98 A.2d 87 (Md.1953).

For his 10th point, plaintiff maintains that the act precludes cities embracing more than one county from acting under the statute. The section in question, 1608(j), provides:

"Notwithstanding the provisions of this Act, the provisions of this Act shall not apply across county lines, regardless of annexation of territory across county line by a city."

This section would appear to be only a jurisdictional limitation of a city's power to approve an urban renewal project that extends across a county line, and does not affect, in any sense, the right of a multi-county city, to participate in the urban renewal program. We do not consider that the Legislature would do a vain and useless thing. The interpretation asked for by the plaintiff would make the act inapplicable to both Oklahoma City and Tulsa, as they were both multi-county cities at the time of the passage of the act. Such could not have been the legislative intent, and we so hold.

For his next point, plaintiff draws our attention to the fact that the Legislature has, since 1955, enacted five Urban Renewal Acts. The first two of such acts were subsequently repealed, with the provisions contained therein being generally covered by 11 O.S.1961, Section 1601–1620, with which we are concerned here, which act was enacted by the Legislature in 1959, and numerically speaking is the third Urban Renewal Act promulgated. This Act is made applicable only to cities having a population over 100,000, and would of course, apply only to Oklahoma City and Tulsa.

The fourth Act was also passed in 1959. It was designated as the "Urban Redevelopment Act" and was expressly made applicable to cities of 10,000 to 100,000 population. The last Act, enacted in 1961, was designated as "Urban Redevelopment Act of 1961". It is made applicable to cities of less than 10,000 population.

Under express provisions contained in the last two Acts, it is provided that no such city shall exercise the authority granted by the Act until a majority of the qualified voters in such city shall have approved the same.

Under the provisions of the third Act, which is at issue here, no such voting rights are granted to the voters in cities with a population of 100,000, but the authority to exercise the rights granted by the Act is vested in the governing body of such city, who shall, by appropriate resolution, proceed to exercise the authority granted by the Act.

Plaintiff argues that to deprive the citizens of a city with a population of 100,000 of the right to vote on such an issue is unreasonable and arbitrary and violates the equal protection of the law guaranteed by the Fourteenth Amendment of the U. S. Constitution and the requirement of the Oklahoma Constitution that laws of a general nature shall have uniform application throughout the state.

Plaintiff further asserts that when determining whether the Act complies with the Constitutional requirement respecting uniform application of laws throughout the state, that these three acts must be considered as Legislative enactments in pari materia. That when so considered, it is obvious that the voting restriction applicable to cities of a population of 100,000 is arbitrary and capricious and is a local or special law.

█ Keeping in mind that the constitutionality of only one Act, 11 O.S.1961, Section 1601-1620, is at issue here, we feel that the confidence placed by plaintiff in the rule of pari materia is misplaced. The rule of pari materia is a rule of judicial construction applicable only when the terms of a statute are ambiguous or of doubtful significance. See 82 C.J.S. Statutes 366(b), p. 813. We have heretofore applied the rule to harmonize or sustain conflicting statutes. Plaintiff does not suggest any ambiguity with respect to the statutes in question. We therefore are not inclined to place much weight on his argument with respect to the rule of pari materia.

█ Neither are we inclined to attach great significance to the argument that the Act is an example of a special or local law which is prohibited by our Constitution. At the time of the enactment of the Act in question it applied only to Oklahoma City and Tulsa, as they were the only cities in Oklahoma with a population in excess of 100,000. Such a limitation does not of itself constitute an arbitrary or capricious classification. As we stated in the case of Lowden v. Oklahoma County Excise Board, 186 Okl. 706, 100 P.2d 448, at page 450:

"In order for a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality in the state. A law may be general and have a local application or apply to a designated class if it operates equally upon all the subjects within the class for which it was adopted."

█ The courts of other states, when faced with the same argument as espoused by plaintiff here have uniformly held that such classification, based on population, not to be violative of constitutional requirements similar to our own. See Williamson v. Housing Authority, etc., of Augusta, 186 Ga. 673, 199 S.E. 43; State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725; Frazer v. Carr, 210 Tenn. 565, 360 S.W.2d 449 (1952).

We therefore are constrained to hold against plaintiff on this point.

For his last point, plaintiff maintains that a city or an authority, under the Act, can encumber property by the issuance of bonds, without the vote of the people, has heretofore been disposed of in our ruling in connection with plaintiff's point No. 6.

We therefore hold that the Urban Redevelopment Law, as set forth in 11 O.S. 1961, § 1601 et seq., to be valid and constitutional.

During the pendency of this case on appeal, it has been called to the attention of the court that there is presently pending in the District Court of Oklahoma County a case wherein the constitutionality of the Ur-

ban Redevelopment Law is being attacked on grounds other than the ones enumerated herein. Suffice it to say that our review of this matter has been limited to the points raised in this opinion and none other.

Our opinion herein makes it unnecessary for us to further consider the contention of the defendant city that plaintiff's appeal should be dismissed because of the failure of plaintiff to make defendant city a proper party to this appeal.

Judgments affirmed.

JACKSON, V. C. J., and DAVISON, WILLIAMS and BERRY, JJ., concur.

BLACKBIRD, IRWIN, HODGES and LAVENDER, JJ., concur in part and dissent in part.

LAVENDER, Justice (dissenting in part).

The plaintiff in error, Roy Isaacs, hereinafter called the plaintiff, for himself and others similarly situated, commenced an action in the District Court of Oklahoma County against the City of Oklahoma City, a municipal corporation, that city's Urban Renewal Authority, and the members of the Board of Commissioners of such Urban Renewal Authority, and its Executive Director, as defendants, praying for a declaratory judgment that the Urban Redevelopment Law that applies to cities having a population in excess of 100,000 (11 O.S.1961 Secs. 1601 through 1620) is unconstitutional upon various grounds, and for an injunction to restrain the defendants from proceeding further under said act pending final determination of such action.

After motions directed to the plaintiff's petition had been sustained in part and the plaintiff had amended his petition to conform to the order of the court, the trial court sustained the defendants' joint demurrer to such amended petition, held the act constitutional and dismissed the plaintiff's action. After his motion for a new trial had been overruled, plaintiff appealed to this court by petition in error and case-made filed herein five days prior to the expiration of the time within which he might

do so. When that time had expired, the defendant city moved to dismiss the appeal upon the ground that the city was an indispensable party to such appeal, and the plaintiff did not serve the case-made on the city nor serve the city with any notice of the time and place for settling and signing the case-made, and the city did not waive such service or notice.

Section 9 of the act (11 O.S.1961, Sec. 1609) provides, among other things, that an Urban Renewal Authority provided for in the act "may sue or be sued." Clearly, this is intended to apply to, but only to, suits involving the existence and/or powers and authority of such an Urban Renewal Authority, and to contemplate that with respect to those questions the Urban Renewal Authority is the only necessary party plaintiff or defendant, as the case may be, so that in a suit against such an Urban Renewal Authority service upon the Authority is all that is required with respect to any questions which affect, either directly or indirectly, the existence or the powers and authority of the Urban Renewal Authority.

However, such an Urban Renewal Authority has no interest in questions involving the powers and authority of a city under the act which do not affect, either directly or indirectly, the existence or the powers and authority of such Authority. Therefore, because of the lack of service of the case-made and of notice of settling and signing the case-made upon the City of Oklahoma City in this appeal, this court is without jurisdiction to review any such questions and, with respect to all such questions, the appeal should be dismissed.

Consideration of all of the provisions of the act in question discloses that the urban renewal contemplated and authorized by the act—the elimination, correction and prevention of conditions which make an area within the corporate limits of a city to which the act is applicable a "blighted area," as defined in the act—is, by the act, made a public purpose or function of the particular city in which such conditions exist; that the elimination, correction and prevention of such conditions by requiring the owners of

property to modify their property, or by acquiring property, by eminent domain if necessary, so that it can be modified or buildings or improvements thereon can be demolished or removed in order to eliminate, correct or prevent conditions which make an area in a city a "blighted area," as an Urban Renewal Authority may be authorized under the act to do, constitutes an exercise of the police power; that although the act provides in sub-section (a) of Section 9 (§ 1609) that "there is hereby created," in each incorporated city to which the act is applicable, a public body corporate to be known as the Urban Renewal Authority, does not exist in or for any such city unless and until such city brings it into existence and after being brought into existence by the city may not exercise the urban renewal project powers and authority provided in the act to be exercised by such an Urban Renewal Authority unless and until vested therewith by such city; that although such Urban Renewal Authority and such city are separate entities, in the sense that each is a public body corporate with its own governing body, such an Urban Renewal Authority in exercising urban renewal project powers and authority so vested in it by such city, acts purely as an administrative agency or agent of the city in the city's performance of an authorized public purpose or function of such city; and that each Commissioner (member of the Board of Commissioners) of such an Urban Renewal Authority, appointed by the mayor of the city and approved by the governing body of the city as provided in the act, is an officer of such city. In short, when an Urban Renewal Authority provided for in the act exercises any of the urban renewal project powers and authority vested in it under the act, it is the city which brought the Urban Renewal Authority into existence and vested it with such powers and authority that is acting.

Therefore, the portions of the act which provide powers and authority which may be exercised by an Urban Renewal Authority authorize the city involved, acting by and through its Urban Renewal Authority, to exercise such powers and authority, and those portions of the act which authorize an

Urban Renewal Authority to incur indebtedness and to issue bonds actually authorize the city involved, acting by and through its Urban Renewal Authority, to incur indebtedness and to issue bonds.

Section 26 of Article 10 of the Constitution of the State of Oklahoma, as amended April 5, 1955, provides in pertinent part that:

"Except as herein otherwise provided, no county, *city*, town, township, school district, or *other political corporation*, or subdivision of the State, shall be allowed to become indebted, *in any manner, or for any purpose*, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for State and county purposes previous to the incurring of such indebtedness: * * * Provided, further, that any county, *city*, town, school district, or *other political corporation*, or subdivision of the State, incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five (25) years from the time of contracting the same, * * *." (Emphasis supplied.).

Section 27 of the same article of the Constitution authorizes any incorporated city or town, with the assent of a majority of the qualified property-tax paying voters of such city or town, voting at an election to be held for that purpose, to become indebted, in a larger amount than that specified in Section 26, above, for the purpose of purchasing or constructing "public utilities," or for repair-

ing the same, to be owned exclusively by such city or town. This section also contains a proviso similar to the one in Section 26, quoted above, requiring the city or town, before or at the time of incurring any such indebtedness, to provide for the levying of an annual tax for the payment of the principal of and interest on such indebtedness.

In Burch v. City of Pauls Valley et al., 201 Okl. 78, 201 P.2d 247, this court in holding unconstitutional an act which authorized incorporated cities and towns, without any vote of the people of the city or town, to incur indebtedness which could be in excess of the debt limit specified in Section 26 of Article 10 of the Constitution for the construction, etc., of water and/or sewer facilities to be secured only by a pledge of revenue from such system or systems quoted from the syllabus to Zachery v. City of Wagoner, 146 Okl. 268, 292 P. 345, 346, as follows:

"The provisions of sections 26 and 27, article 10, of the Constitution apply without regard to the source from which the funds pledged to the payment of the indebtedness incurred are to be obtained.

"The fact that an indebtedness incurred by a municipality is to be paid only from some source other than ad valorem taxation does not render inoperative the limitation contained in section 26, article 10, of the Constitution, or extend the grant of authority contained in section 27, article 10, of the Constitution."

And the court expressly refused to apply the "special fund" doctrine under which this court had, and has, many times held that the provisions of our Constitution relating to State indebtedness do not prevent the legislature from authorizing the State, or an agency of the State, to incur indebtedness in excess of appropriations to be secured only by a pledge of revenue from a revenue-producing project authorized by the legislature.

Later, in denying approval of natural gas system revenue bonds being issued by the City of Tahlequah under an act quite similar to the one involved in Burch v. City of Pauls Valley, supra, except that it required approval of the proceedings and bonds by this court instead of by the Attorney General as the State Bond Commissioner, and, like Sec. 27 of Article 10 of the Constitution, required approval of the proposition by a majority of the qualified property-tax paying voters of the municipality voting at an election held for that purpose, this court in Application of the City Council of the City of Tahlequah, Oklahoma, Okl., 285 P. 2d 418, referred to the Burch case and Zachery v. City of Wagoner, supra, and based upon Town of Walters v. Orth, 59 Okl. 99, 158 P. 352, held in the second paragraph of its syllabus:

"Under article 10, section 27, of the Constitution of this state, any contract of any city incurring an indebtedness for any purpose named therein which required the assent of the voters therefor is void, unless such city, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by the Constitution sufficient to pay the interest on such contracted indebtedness as it falls due and to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

The act authorizes an Urban Renewal Authority to incur indebtedness and to issue notes and bonds, *at its discretion*, to finance any urban renewal project under the act, which notes and bonds shall be authorized by resolution of the Urban Renewal Authority and shall be payable "solely" from income, revenue, proceeds and funds of the Authority derived from or held in connection with its carrying out of urban renewal projects under the act, but payment of such notes or bonds may be further secured (a) by a pledge of any loan, grant or contribution from any source, in aid of any urban renewal projects of the Authority under the act, and (b) by a mortgage of any such urban renewal projects, or any part thereof, title to which is in the Urban Renewal Authority (see Secs. 1610 and 1616). The act places no limitation whatsoever upon the amount of indebtedness that may so be incurred or upon the amount of bonds that may so be issued, and it is quite clear that no vote of the people of the city and no pro-

vision for an annual tax levy for retirement of any such indebtedness is required or even contemplated by the act. Thus, the act authorizes a city to which the act is applicable, acting by and' through its·Urban Renewal Authority as its agent for the administra-'tion and carrying out of the city's official urban renewal projects, to incur indebtedness in violation of the debt-limitation provisions of Section 26 of Article 10 of the Oklahoma Constitution and without compliance with the vote and tax levy requirements of that section or, where the indebtedness is to be incurred for the purchase, construction or repair of "public utilities," without compliance· with the vote and tax levy.requirements of Section 27 of Article 10 of the Oklahoma Constitution.

The plaintiff's sixth and eleventh grounds of attack must be sustained with respect to those portions of the act which authorize an Urban Renewal Authority in any fiscal year to incur indebtedness which, when combined with all other indebtedness of the city involved, would exceed the "income and revenue" provided for such city for that fiscal year, within the meaning of the term "income and revenue" as used in Section 26 of Article· 10· of the Oklahoma Constitution.

Incidentally, the agent-for-the-city theory is the only.theory upon which that portion of .the act which exempts from taxation property acquired by an Urban Renewal Authority while held by such Authority can be upheld as constitutional (see Section 50 of Article 5, and Section 6 of Article 10, of the Oklahoma Constitution); and it is only upon that theory that there would be no doubt as to the validity of those portions of the act under which an Urban Renewal Authority may exercise police power.

It is intended that this dissent shall be applicable to both No. 41,527, S. M. Roof et al. v. Tulsa Urban Renewal Authority et al., and No. 41,276, Roy Isaacs v. The· City of Oklahoma City et al., which cases have been consolidated by order of this court.

I respectfully dissent from the opinion of the majority only however insofar as it upholds the constitutionality and validity of those portions of the act in question which authorize an Urban Renewal Authority during a fiscal year to incur indebtedness (whether evidenced by bonds or not so evidenced) in an amount which, when combined with all other indebtedness of the city involved, would exceed the "income and revenue provided for such year" for such city, within the meaning of that term as used in Section 26 of Article 10 of the Constitution of the State of Oklahoma, and also insofar as such opinion passes upon the constitutionality or validity of any portions of the act in question which provide powers and authority to be exercised by a city, as a city, which do not affect, either directly or indirectly, the bringing into existence, or the existence, or· the powers and authority, of an Urban Renewal Authority under the act.