John E. BOARDMAN, Petitioner,

v.

The OKLAHOMA CITY HOUSING AUTHORITY; L. D. Newton, Chairman; Byron Biscoe, Vice Chairman; Larry J. Wolf, Commissioner; John M. Perry, Commissioner; Tolbert E. Elliott, Executive Director, Respondents.

No. 43097.

Supreme Court of Oklahoma.

Sept. 24, 1968.

Shirk, Withington, Work & Robinson, Oklahoma City, for plaintiff in error.

Ted J. Davis, Fuller, Davis, Henderson & Tubb, George J. Fagin & Andrew J. Haswell, Jr., Oklahoma City, for defendants in error.

John Draper, Oklahoma City, for twenty-three local housing authorities, amici curiae.

WILLIAMS, Justice. ·

Petitioner herein, John E. Boardman, seeks an order of this Court assuming original jurisdiction and enjoining The Oklahoma City Housing Authority and the individual members of the Authority's Board of Commissioners and its executive director, respondents herein, from executing, issuing or delivering certain bonds pursuant to the provisions of The Oklahoma Housing Authorities Act, 63 O.S.1967 Supp. § 1051 et seq.

The Oklahoma Housing Authorities, hereinafter referred to as the "Act", was enacted by the Legislature in 1965. Under its provisions, there was created in each city and each county of the State a public body to be known as the "housing authority" of that particular city and county. In summary, the apparent over-all purpose of the Act is to alleviate overcrowded and slum dwelling conditions and to provide a method for the construction of housing for low income persons, all of which is declared to be a matter of public interest.

■ A number of the housing authorities created by the Act have been activated in various cities and counties and are now functioning. As the questions involved herein affect these authorities as well as respondent Authority in this action, the immediate determination of such question is important and we have concluded to accept original jurisdiction. See Meder v. City of Oklahoma City, Okl., 350 P.2d 916.

To support his requested relief, petitioner presents three propositions setting forth his view that various sections of the Act violate the Oklahoma Constitution. These propositions will be discussed in the order presented.

In his first proposition, petitioner argues that § 1078 of the Act grants to the Authority the power to condemn property for other than public purposes and therefore violates §§ 23 and 24 of Article II, Oklahoma Constitution.

■ The determination of whether property is being taken for a "public use" is a judicial question and is not necessarily to be controlled by a legislative declaration. In the determination of this question, we note that this Court has recognized " * * that the definition of that term [public use] has undergone somewhat of a metamorphosis in contemporary decisions from the formerly understood meaning of 'use by the public'." McCrady v. Western Farmers Electric Cooperative, Okl., 323 P.2d 356, 359.

In Isaacs v. Oklahoma City, Okl., 437 P.2d 229, this Court was asked to declare that the grant of the power of eminent domain by this State's Urban Redevelopment Act to the urban renewal authorities created thereunder was unconstitutional as it allowed property to be taken for other than public purposes. In Isaacs, we refused to declare such grant unconstitutional and cited Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27, wherein the United States Supreme Court refused to find unconstitutional the grant of the power of eminent domain in the District of Columbia Redevelopment Act of 1945. In so holding, the Supreme Court therein stated:

"We do not sit to determine whether a a particular housing project is or is not desirable. The concept of the public welfare is broad and inclusive. See Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 424, 72 S.Ct. 405, 407, 96 L.Ed. 469. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determi-

nations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capitol should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way." 348 U.S. 33, 75 S.Ct. 102.

The act under consideration in *Berman* was a comprehensive urban redevelopment act and provided for public housing as well as the elimination of slum and blighted areas.

■ Oklahoma's Urban Redevelopment Law, which was considered in *Isaacs*, specifically states that none of its provisions "shall be construed to authorize any city or Urban Renewal Authority to construct or operate public housing facilities." 11 O.S. 1961, § 1606. But in our opinion it is apparent that the legislative authorization of the Urban Redevelopment Law to eliminate slums and blighted areas and the authorization of the Act in question herein to provide public housing go hand in hand. This is made clear by the Act itself, wherein it is stated "that such projects would also make housing available for persons of low income who are displaced in the rehabilitation, clearance, or redevelopment of slums and blighted areas." 63 O.S.1967 Supp. § 1053(d).

■ We have carefully reviewed the findings and declaration of necessity stated in § 1053 of the Act involved herein. In view of our decision in *Isaacs* and the overwhelming number of decisions in the United States as represented by Berman v. Parker, supra, we are of the opinion that property to be taken under the provisions of the Act would be taken for the public use and welfare and therefore would not be taken in violation of the Oklahoma Constitution. For this reason, petitioner's first proposition is without merit.

In his second proposition, petitioner contends that respondent Authority is an agency of the State and as such is prohibited by Sections 23 and 25 of Article 10, Oklahoma Constitution, from authorizing or creating any debt or obligation against the State.

It is true that an authority created by the Act is empowered by § 1068 thereof to issue bonds to carry out its corporate purposes. Section 1068 further provides that the principal and interest due on such bonds may be paid from the income and revenues derived from the housing facilities constructed by an authority or from the authority's revenues generally. It continues by providing:

"* * * The bonds and other obligations of an authority, and such bonds and obligations shall so state on their face, shall not be a debt of the city or county, or of the state or any political subdivision thereof, and neither the city or county nor the state or any political subdivision thereof shall be liable thereon, and in no event shall such bonds or obligations be payable out of any funds or properties other than those of the authority. The bonds shall not constitute an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction."

In referring to our previous decisions upholding various statutes establishing corporate bodies and authorities empowered to issue bonds payable from revenues derived from the facilities constructed by the proceeds received from the sale of the bonds, this Court, in Application of Oklahoma Educational Television Authority, Okl., 272 P.2d 1027, 1031, stated:

"* * * We observe these authorities and adhere to that rule as therein applied. Those bond issues or debts were not created against existing permanent funds of the state, for regularly recurring use in the interest of the citizens of the state. The money realized by each of those bond issues itself created the construction or facility which in turn produced the income and funds against which the debt was a standing obligation, and the debt specifically could not be collected from any other source, nor paid with any other moneys. But for the

creation or construction of the facilities in those cases, the funds against which those debts stood would never have existed."

Also see Sheldon v. Grand River Dam Authority, 182 Okl. 24, 76 P.2d 355; Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795; and Isaacs v. Oklahoma City, supra.

 In view of our previous expressions, we are of the opinion that the bonds issued in accordance with the provisions of the Act herein do not come within the prohibition of Sections 23 and 25 of Article 10, Oklahoma Constitution.

In his third proposition, petitioner assumes that respondent Authority is an agency or instrumentality of Oklahoma City, and therefore contends that the Authority is prohibited by Section 26, Article 10, Oklahoma Constitution, from incurring indebtedness beyond available funds unless so authorized by a vote of the residents of Oklahoma City. However, we cannot accept petitioner's assumption that the Authority is an agency or instrumentality of the city.

Section 1055 of the Act provides that "(I)n each city and in each county of the state *there is hereby created* a public body corporate and politic to be known as the 'housing authority' of the city or county." (Emphasis added.) The terms "authority" and local "governing body" are given separate definitions indicating separate legal identities. The powers of the authority are carefully delineated in the provisions of the Act and these powers are vested in the authority's board of commissioners.

Only in a few instances is the authority affected by the action of a local governing body. Section 1055 provides that the created authority shall not transact any business until the applicable local governing body declares that there is need for an authority to function in the city or county. Section 1058 provides that an authority's commissioners are to be appointed, as the case may be, by a mayor of a city with the advice and consent of its governing body

or by the board of county commissioners. Section 1061(b) provides that a proposed project of more than twenty new housing units requires a joint public hearing by the authority's commission and the governing body and requires an approval by a majority of such commissioners and a majority of such governing body.

In our opinion, these areas wherein the action of the local governing body is required do not make the authority an agency or instrumentality of a city or county. It is clear from the Act that the elimination of inadequate and slum housing and the construction of new housing is considered of both state and local concern and interest. The Legislature has created the housing authorities and specified their powers, but in so doing, recognized that local conditions were better known by local governing bodies. This spirit of cooperation should not be discouraged.

It should also be noted that the debt limitations placed on cities and counties in Section 26, Article 10 of our Constitution, is applicable by the terms of that section to a " * * * political corporation, or subdivision of the State." However, in our opinion the housing authorities created by the Act herein are not political corporations or subdivisions of the State as those terms are used in Section 26. In Armstrong v. Sewer Improvement Dist. No. 1, 201 Okl. 531, 532, 199 P.2d 1012, 1014, 207 P.2d 917, we stated:

" * * * But a reading of the Act herein involved clearly discloses that the sewer improvement districts therein provided for are not organized for political or governmental purposes and do not possess political or governmental powers other than those necessary to carry out the specific purposes for which they are created. They are *in no sense* additions to or agencies in aid of the general government of the state, or in the aid of any governmental agencies or functions, but are purely for the purpose of promoting the welfare and benefit of the inhabitants of that particular district."

 

We have carefully examined the Bond Resolution attached to the petition filed herein, including forms of proposed bonds, and find they are in order and valid and conform to the provisions of the Oklahoma Housing Authorities Act, 63 O.S. 1967 Supp. 1051 et seq., and that any bonds issued and sold in conformity therewith will be valid.

Writ of injunction denied.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.

BLACKBIRD, J., dissents.