Dear Director Edmison,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. Does the Pollution Control Coordinating Board have theauthority to decide when one of its member agencies will be ableto issue permits to regulate discharges to state waters?
2. Do the Oklahoma State Department of Health, the OklahomaWater Resources Board, the Oklahoma Department of Agriculture andthe Oklahoma Corporation Commission have statutory authority toissue permits to regulate discharges to state waters?
3. Are storm sewers included within the definition of "watersof the state" for purposes of agency regulatory activities?
¶ 1 The questions that you have raised pertain to the extent of the statutory jurisdiction of the Pollution Control Coordinating Board (PCCB) and four PCCB member agencies: the Oklahoma Water Resources Board (OWRB), the Oklahoma State Department of Health (OSDH), the Oklahoma Corporation Commission (OCC), and the Oklahoma Department of Agriculture (ODA). Each question will be discussed and answered in turn.
 I. THE PCCB AND ITS MEMBER AGENCIES HAVE INTER-RELATED STATUTORY AUTHORITY TO REGULATE DISCHARGES TO STATE WATERS
¶ 2 At the heart of your opinion request is the extent of the authority of the PCCB to designate which of its member agencies will govern the issuance of a particular type of permit when there is duplication of agency effort. For this reason this issue will be examined first.
¶ 3 As can be seen from the above listed questions the particular types of permits that generated the instant controversy were permits regulating discharges to the waters of the state. Furthermore, as these questions suggest, all of the agencies listed above have some statutory authority to issue permits for discharges to state waters.
¶ 4 Briefly stated, the OSDH has statutory authority to issue a permit for the discharge of sewage from a sewer system into any waters of the state. 63 O.S. 1-909 (1981). Furthermore, the OWRB is authorized to require the acquisition of permits for discharges of industrial waste into waters of the state. 82 O.S.926.4 (1981). In addition, the ODA has the authority to issue permits for discharge of some agricultural wastes into the waters of the state. 2 O.S. 9-201-2 O.S. 9-212. Finally the OCC has the jurisdiction to regulate the disposition of waste oil and related products for the purpose of preventing the pollution of surface and subsurface waters. 52 O.S. 139 (1981).
 II. THE PCCB HAS THE STATUTORY AUTHORITY TO ELIMINATE THE DUPLICATION OF EFFORT OF ITS MEMBER AGENCIES
¶ 5 The foregoing illustrates how similar are the above listed legislative directives which establish agency authority to protect state waters. Each of the four agencies at issue has some statutory jurisdiction to regulate discharges made into Oklahoma waters.
¶ 6 In 1968, the Oklahoma Legislature passed the Pollution Control Coordinating Act of 1968 (The Act), codified at 82 O.S.932 (1989) et seq. It appears from the language therein that this Act was passed to resolve the jurisdictional conflicts that may arise in a situation such as the present one where four agencies are authorized to monitor discharges to water.
¶ 7 Pursuant to the Act, the PCCB was created to coordinate this state's environmental regulation. In particular, the PCCB was created and vested with the following authority:
 To coordinate and eliminate duplication of effort of the state agencies having statutory authority in environmental pollution control in the prevention and abatement of environmental pollution as necessary to carry out the purposes and intent of this act.
82 O.S. 934 (198). (Emphasis added).
¶ 8 It is even more evident that the PCCB was created to coordinate the programs of the environmental agencies upon examination of its membership. The PCCB is composed of eleven members, as follows:
 The State Commissioner of Health; the President of the State Board of Agriculture; the Director of the Oklahoma Water Resources Board; the Director of the Department of Wildlife Conservation; the Chairman of the Oklahoma Corporation Commission; the Chief Mine Inspector; the Executive Director of the Oklahoma Conservation Commission; and four members appointed by the Governor with the advice and consent of the Senate. The appointed members shall be knowledgeable and experienced in environmental activities and shall serve at the pleasure of the Governor.
82 O.S. 932(B) (1989).
¶ 9 Section 932(B) designates as PCCB voting members the heads of the environmental agencies whose jurisdictional limits are the subject of this opinion. As those agencies are also PCCB members required to coordinate effort and eliminate duplication, it is clear that the intended purpose of the PCCB was to provide a unifying forum for the accomplishment of that goal. Read together, these provisions verify that the Legislature sought to eliminate any duplication of agency effort by vesting PCCB with the ability to resolve conflicts.
¶ 10 The key question here is whether the PCCB has the power to prohibit an agency from issuing a particular permit when it has general statutory jurisdiction to do so. No agency can take away another agency's jurisdiction as that ability lies exclusively with the Legislature. Okla. Const. Article IV, Section 1 . Furthermore, the law prohibits one agency from giving its jurisdiction in one area to another agency:
 The task of conferring jurisdiction, and changing jurisdiction, is properly the function of the legislative branch of government.
Matador Pipelines, Inc. v. Oklahoma Water Resources Board,742 P.2d 15, 18 (Okla. 1987). For example, in Matador, it was held that the Oklahoma Corporation Commission did not have the authority to grant to the OWRB jurisdiction over pollution of the state waters caused by a break in a crude oil pipeline. The court in Matador found that the Corporation Commission has exclusive authority in this area and that the OVVRB does not have concurrent authority. Consequently, the OWRB had no authority to enforce standards in the oil and gas arena.
¶ 11 The court's ruling in Matador is inapplicable for purposes of this opinion except by way of example. Section 82O.S. 934 of title 82 of the Oklahoma statutes codifies the PCCB duty to eliminate duplication of effort among agencies whichhave statutory jurisdiction. Therefore, 934 does not divest any agency of its statutory authority.
¶ 12 The PCCB is considered an agency pursuant to Oklahoma law. The term "agency" is defined in the Administrative Procedures Act as meaning
 any constitutionally or statutorily created state board, bureau, commission, department, authority, public trust in which the state is a beneficiary, or interstate commission.
75 O.S. 250.3(1) (1989). (Emphasis added).
¶ 13 Because the PCCB is an agency it has the authority to regulate fully within the bounds of its statutory jurisdiction in keeping with the purpose of its creation. 82 O.S. 934 (1989). However, agency powers to regulate in a particular area are limited. It is a well established principle that the Legislature may not delegate to an administrative agency the power to make laws. Isaacs v. Oklahoma City, 437 P.2d 229 (Okla. 1966). In contrast, the Oklahoma Supreme Court has consistently held that the Legislature may delegate to an administrative board the authority to prescribe and enforce rules and regulations to carry into effect and to aid in the enforcement of existing laws. Id.
The court in Isaacs quoted with favor from Harris v. State, exrel. Oklahoma Planning Resources Board, 251 P.2d 799 (Okla. 192), stating the following
 The Legislature cannot delegate legislative power, but it may delegate authority or discretion to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend.
437 P.2d at 233. (Emphasis added).
¶ 14 The PCCB may determine the circumstances upon which an agency may exercise its jurisdiction without violating the constitutional requirement for separation of powers. That is, the PCCB can determine that duplication of effort might best be eliminated by ordering one agency not to exercise its jurisdiction in one program area. This includes choosing an agency properly vested with authority to regulate the issuance of a particular permit. Such is well within the authority of the PCCB. In fact, it is a duty required by 82 O.S. 934(1) (1989).
¶ 15 With respect to this duty, one of the most controversial issues is the extent to which the PCCB can eliminate duplication of effort. This requires an analysis of 934.
¶ 16 General rules of statutory construction require that a statute be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.Jordan v. State, 763 P.2d 130 (Okla. 1988). In addition, there is no room for statutory construction or provision for further inquiry where the statute plainly speaks. Mindemann v.Independent School District No. 6 of Caddo County, 771 P.2d 996
(Okla. 1989). When the statute plainly speaks its evident message must be accepted. Id.
¶ 17 The Legislature plainly granted the PCCB the power and the duty to coordinate and eliminate duplication of agency effort. Consequently, PCCB authority is not boundless. The plain words of 926.4 impart a limiting circumstance for PCCB action. The PCCB is only authorized to eliminate duplication of effort. "Duplication of effort" is not defined by statute. The term "duplicate" is defined by Black's Law Dictionary (5th Edition) as meaning
 To double, repeat, copy, make, or add a thing exactly like the preceding one; reproduce exactly.
¶ 18 In the context of this opinion, which focuses on the issuance of water permits, duplication contemplates an agency reproducing exactly the regulatory actions of another agency. Such a duplication occurs, for example, when two or more agencies seek to regulate the same type of discharge to state waters at the same geographic point of entry.
 III. WATERS OF THE STATE INCLUDES STORM DRAINS
¶ 19 For the most part, your second question is answered by a plain reading of each designated statute. All four agencies are vested with authority to regulate certain discharges into state waters. The only issue that is not specifically addressed by statute is whether storm drains are included in the term "waters of the state."
¶ 20 In particular, it was asked whether the authority of the OSDH and OWRB to regulate discharges to state waters applies to discharges to storm drains. The OWRB has the duty to regulate industrial and commercial discharges to state waters. 82 O.S.926.4 (1981). In addition, the OSDH has the duty to issue permits for the placement of sewage into state waters. 63 O.S.1-908/63 O.S. 1-909.
¶ 21 With respect to the OWRB, "waters of the state" is defined as including:
 drainage systems and all other bodies or accumulations of water, surface and underground, natural or artificial, public or private, which are contained within, flow through, or border upon this state or any portion thereof, except privately owned reservoirs used in the process of cooling water for industrial purposes, provided that water released from any such reservoir into a stream system of the state shall be and become waters of the state.
82 O.S. 926.1(6) (1981)
¶ 22 More specifically, the term "system" includes "all facilities used for collecting or conducting wastes to a point of ultimate disposal. 82 O.S. 926.1(3) (1981). Furthermore, the term "disposal system" includes any "system for disposal of wastes, and includes sewerage systems and treatment works." 82O.S. 926.1(5) (1981).
¶ 23 Based on the foregoing statutory provisions, the OWRB has the authority to issue permits for discharging industrial and commercial waste into municipal storm drains. 82 O.S. 926.1(2) and 82 O.S. 926.4(B) (1981). Storm drains could be included in the regulation of industrial disposal systems since such encompasses any system for the disposal of wastes including sewerage systems. 82 O.S. 926.4 82 O.S. 926.1(5) (1981).
¶ 24 For the purpose of interpreting OSDH statutes, the term "waters of the state" includes "all bodies of surface water, whether natural or artificially impounded." 63 O.S. 1-901(a) (9181). Furthermore, the term "sewage" includes any substance that contains any contaminating chemicals or other contaminating wastes from industry. 63 O.S. 1-901(b) (1981). Consequently, like the OWRB, the OSDH is also authorized to issue permits for discharges to storm drains. Furthermore, the discharged material may include industrial discharges.
¶ 25 It is, therefore, the official opinion of the AttorneyGeneral that:
1. The Pollution Control Coordinating Board, created pursuantto 82 O.S. 932 (1989) et seq., has the authority to eliminateduplication of effort among environmental regulatory agencies.The Pollution Control Coordinating Board does not have theauthority to vest statutory jurisdiction in any agency nor todivest statutory jurisdiction from an agency.
2. The Oklahoma State Department of Health, the Oklahoma WaterResources Board, the Oklahoma Department of Agriculture and theOklahoma Corporation Commission all have statutory authority toissue permits to regulate certain discharges into state waters.63 O.S. 1-908; 63 O.S. 1-909; 82 O.S. 926.4; 2 O.S. 9-201
to 2 O.S. 9-212; 52 O.S. 139 (1981).
3. Storm drains are included within the definition of "watersof the state" as defined by 82 O.S. 926.1(6) (1981), forpurposes of agency regulatory activities.
ROBERT H. HENRY Attorney General of Oklahoma
BRITA HAUGLAND CANTRELL Assistant Attorney General